INTERSTATE POWER COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*November 14, 1930—February 10, 1931.*

468

For the appellants there was a brief by *McGovern, Curtis, Devos & Reiss* of Milwaukee, and oral argument by *Wallace Reiss*.

For the respondents Industrial Commission and State of Wisconsin there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

WICKHEM, J. It is the contention of the appellant that the contract between Oehler and the Interstate Power Company was governed exclusively by the compensation act of Iowa, where the contract of employment was made. The case presents substantially the converse of the situations heretofore considered in *Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 170 N. W. 275, 171 N. W. 935; *Zurich G. A. & L. Ins. Co. v. Industrial Comm.* 193 Wis. 32, 213 N. W. 630; *Wandersee v. Industrial Comm.* 198 Wis. 345, 223 N. W. 837; and *Val Blatz Brewing Co. v. Industrial Comm.* 201 Wis. 474, 230 N. W. 622. In all of these cases this court considered the jurisdiction of the commission to enter an award in situations where the injury occurred outside the state of Wisconsin. A review of these

cases is essential to an understanding of the problem presented here.

In *Anderson v. Miller Scrap Iron Co., supra,* the defendant was a Wisconsin corporation, having its principal place of business in Green Bay. The injured person was a resident of Wisconsin and an employee of the defendant company. The business of the company was carried on almost entirely within the state of Wisconsin. Nearly all of the injured person's services had been rendered in this state. The accident occurred in Michigan. It was held that the plaintiff's contention that, since the injury had occurred within the state of Michigan, the rights of the parties must be determined in accordance with the laws of Michigan, and that the Wisconsin workmen's compensation act could not affect the liabilities of the defendant company because it could not have any extraterritorial effect, was invalid. It was held that the liability of the employer under the act was not tortious, nor strictly contractual in the sense that it should be treated as a covenant. It was held that the act enters into and becomes a part of every contract to the extent that the law of the land is a part of every contract. It was stated that every contract is to be enforced and interpreted in accordance with the law of the place where it is made, and that the rights and liabilities of the parties thereto are to be determined in accordance with that law. The court held that principles which are applicable to actions *ex delicto* should therefore not apply to claims arising under the workmen's compensation act.

In *Zurich G. A. & L. Ins. Co. v. Industrial Comm., supra,* the employer was a Wisconsin corporation. In January, 1925, it commenced the construction of a bridge in Texas. It was expected that the Texas job would be completed in about four months. The deceased was a resident of Wis-

consin, the president of the company, but was held to be an employee for the purpose of this construction work, which he supervised. He was killed in Texas. The court held that the Wisconsin act applied, and stated that this holding depended on the fact that his employment was pursuant to a Wisconsin contract.

In *Wandersee v. Industrial Comm.* 198 Wis. 345, 223 N. W. 837, the employer was a resident of Chippewa Falls, and was under the workmen's compensation act. The employee was a resident of Minnesota. In November, 1926, the employee was hired by the employer to buy hides in Minnesota and South Dakota. The contract was made in Wisconsin. He covered his territory with an automobile furnished by the employer. In 1927, while driving in Minnesota, in the course of his employment, one of his feet was frozen. The question presented was whether the Wisconsin workmen's compensation act applied to services rendered in another state, pursuant to a contract made in this state, no service having been rendered in this state under such contract. The court denied compensation on the ground that the employee had performed no services in Wisconsin.

In *Val Blatz Brewing Co. v. Industrial Comm., supra,* the Val Blatz Brewing Co., doing business in Milwaukee, entered into a contract in Wisconsin with the deceased husband of Alma Gerard, to sell its products in Missouri and Arkansas. The deceased was killed in an automobile accident at Fort Smith, Ark., having gone there to call on the trade for his employer. It was held that the deceased came under the provisions of the Wisconsin compensation act, provided his residence in Wisconsin be established. It was held that where residents of Wisconsin enter into a contract of employment in Wisconsin, a constructive status of employer and employee is created in Wisconsin, and that the

Wisconsin act applies, no matter where the injury occurs, so long as this status continues. The court distinguished the *Wandersee Case* in the following language:

"In *Wandersee v. Industrial Comm.* 198 Wis. 345, 223 N. W. 837, the employee was denied compensation because he was a resident of Minnesota, who was not subject to the laws of Wisconsin and whose service was to be performed outside of the state."

From the foregoing cases it may be concluded that where the employer and employee are residents of Wisconsin, and the contract is made in Wisconsin, the provisions of the Wisconsin act become a part of the contract of employment, and the employee is entitled to the benefits of the act no matter where he performs the services and no matter where his injury in the course of his employment is sustained. It may also be taken as established by the *Wandersee Case* that where the employee neither lives in Wisconsin, nor performs service in Wisconsin, nor is injured here, he is not under the act even though his employer resides in Wisconsin and the contract is made in this state. In all of these cases the fact that the contract is made in this state and that the parties are resident here is treated as a major factor in determining that the Wisconsin law has extraterritorial effect. It appears that the Iowa act also has extraterritorial effect. Under the provisions of the Iowa compensation act, secs. 1363 and 1377, it appears that the Iowa statute is of the optional type and that where the employer and employee have not given notice of an election to reject the terms of the act, "every contract of hire, express or implied, shall be construed as an implied agreement between them and a part of the contract on the part of the employer to provide, secure, and pay, and on the part of the employee to accept compensation in the manner as by this chapter provided for all personal injuries sustained arising out of and in the course of

the employment." In the case of *Pierce v. Bekins Van & Storage Co*. 185 Iowa, 1346, 172 N. W. 191, the employer and employee were residents of Iowa. The contract was made in that state and partially performed there, but the injury occurred in Nebraska. The court said:

"Where the statute is elective as to both employer and employee, payment of compensation is not the performance of a statute duty, but the performance of conditions in the contract of hiring, which conditions are in the contract by means of reading the compensation statute into the contract. . . . Under such a contract the employee could not refuse to obey if the master directed him to leave the state to perform an act in the course of the employment. If he did obey, there is no reason why the master should be allowed to repudiate that part of the contract of employment which provided how compensation should be made if the servant suffered an injury while obeying this direction. Such a contract protects both and defines the rights of both. The master is assured of the limitations of his liability. The servant is assured of definitely fixed compensation, mutually agreed upon as adequate, and that he will receive the same promptly and without the vexation or expense of litigation. "We hold that the employee in this case has a valid contract which allows him to recover compensation according to the terms of the statute for an injury suffered in Nebraska; that the case stands precisely as if it had been expressly contracted that, for an injury suffered outside of the state, the compensation due should be determined by the terms of the Iowa statute."

We have, then, this situation: The deceased came to Wisconsin temporarily to do some work for his employer. The employer, a Wisconsin corporation, had its principal business in Iowa. The parties had elected to accept the provisions of the Iowa act, which has extraterritorial operation. Do these facts point to the conclusion that the Wisconsin act has no application, and that the Wisconsin Industrial Commission has no jurisdiction in this case?

At this point it becomes necessary to consider the provisions of our workmen's compensation act. Sub. (4), sec. 102.07, Stats., defines "employee" as "Every person in the service of another under any contract of hire, express or implied, oral or written, including aliens. . . ." Sec. 102.08 provides: "any employee as defined in subdivision (4) of section 102.07 shall be deemed to have accepted and shall, within the meaning of section 102.03, be subject to the provisions of sections 102.03 to 102.34, inclusive, if, at the time of the accident upon which liability is claimed: (1) the employer charged with such liability is subject to the provisions of sections 102.03 to 102.34, inclusive, whether the employee has actual notice thereof or not; and (2) such employee shall not have given to his employer notice in writing that he elects not to be subject to the provisions of sections 102.03 to 102.34, inclusive."

In dealing with the contentions made in this case, it is necessary first briefly to dispose of the question of jurisdiction. On this point we entertain no doubt that the state of Wisconsin has jurisdiction to regulate the conduct of industries within the state, and to prescribe as one of the conditions upon which performance of an out-of-state contract of hiring shall be permitted in this state, compliance with the provisions of the Wisconsin workmen's compensation act. *American Radiator Co. v. Rogge,* 86 N. J. L. 436, 92 Atl. 85, 94 Atl. 85, cited with approval in *Chicago, R. I. & P. R. Co. v. Lundquist,* 206 Iowa, 499, 221 N. W. 228. In our judgment this does not mean that the state of Iowa has no jurisdiction to extend the benefits of its act to injuries received outside the state of Iowa, in the course of an employment initiated by an Iowa contract.

If this be so, this case presents simply a question as to the proper construction to be placed upon the workmen's compensation act as enacted in this state. If the act was

intended to apply to injuries sustained by employees in this state, without regard to the place of contract, the sole remaining question in the case is answered.

It will be noticed that the act refers to "any employee," and that in referring to employers it includes "every person, firm, and private corporation (including any public-service corporation), who has any person in service under any contract of hire, express or implied, oral or written, and who, at or prior to the time of the accident to the employee for which compensation under sections 102.03 to 102.34, inclusive, may be claimed, shall, in the manner provided in section 102.05, have elected to become subject to the provisions of sections 102.03 to 102.34, inclusive.... ." In commenting on this language, Mr. Chief Justice WINSLOW, in *Borgnis v. Falk Co.* 147 Wis. 327, 365, 133 N. W. 209, said:

"Its provisions are broad and without express exception. Read according to their grammatical meaning, they include all employers and employees who occupy those relations at the time the law becomes effective. If there was an intention to exclude any from its terms, that intention has been carefully concealed."

This statement was made with reference to the question whether the law was intended to apply to persons who, at the time the law was enacted, were employed under contracts of service made prior to the passage of the law. It seems, however, quite applicable to the present situation. The only reasonable view is that the language is intended to be as broad as the jurisdiction of the state over the subject matter of the act. It of course would not seriously be contended that it was intended to govern injuries occurring in Minnesota under contracts of hire entered into in Minnesota, by residents of Minnesota, and wholly performed in that state. But there is nothing in the act to indicate that its intended scope (omitting, of course, its elective features)

was any less extensive than the jurisdiction of the state over its subject matter. This seems to have been the understanding of this court in the *Blatz* and *Wandersee Cases.* In the *Blatz Case* it is stated:

"The right to receive and the liability to pay compensation grow out of and are incidental to the status created by the employment. . . . The liability arises out of the law itself, rather than out of the contract of the parties. . . . That status is created when service is performed within the state under a contract of hire, without regard to the question of where the contract was made."

In the *Wandersee Case,* heretofore cited, the court said:

"The purpose of this act was to regulate the relation of employer and employee in the state of Wisconsin. Therefore, to constitute a person an employee under the provisions of the act such person must render service for another in the state of Wisconsin under a contract of hire, express or implied, oral or written. Until he performs service for another in the state of Wisconsin he is not an employee. The terms of the act do not affect him and he is not bound by it. As soon as he performs service for another in the state of Wisconsin under a contract of hire, then the act enters into and becomes a part of the contract, 'not as a covenant thereof, but to the extent that the law of the land is a part of every contract' (*Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 170 N. W. 275, 171 N. W. 935), and he is entitled to compensation under the act for injuries sustained while rendering service under the contract, whether it be within or without the state. *Anderson v. Miller Scrap Iron Co., supra; Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 193 Wis. 32, 213 N. W. 630."

In *Sheban v. A. M. Castle & Co.* 185 Wis. 282, 201 N. W. 379, a foreign corporation had but two employees within the state, and the court declined to count its employees outside of the state for the purpose of bringing it within the provisions of the act.

It will be noticed further that in the *Blatz Case* the court held that when residents of the state contract for services

to be performed out of the state, a constructive status under the Wisconsin compensation act is created. What is meant by this constructive status? We think it means simply that, constructively, the services are being performed in Wisconsin. Whether this so-called constructive status be treated as a fiction or a reality, it points to the fact that the *Blatz* decision was based on the assumption that the act applied to services performed in the state of Wisconsin under a contract of hire, wherever made. It seems to be assumed in the case of *Chicago, R. I. & P. R. Co. v. Lundquist, supra,* that this is the rule in Iowa, for there it is said:

"It must be said that the business of the appellee employer, for the purpose of the transaction in question, was localized within this state. The employee was injured while transacting the business of the employer in this state, and the compensation act of this state is therefore applicable."

See, also, *American Radiator Co. v. Rogge, supra; Johnson v. Nelson,* 128 Minn. 158, 150 N. W. 620.

Even if, as was earnestly and ably contended in the briefs submitted in the *Blatz Case,* the doctrine of that case represents an unduly liberal construction of the act, that furnishes no ground for a judicial limitation, in the interests of uniformity, upon the plainly intended operation of the act.

Wisconsin was a pioneer in the field of workmen's compensation legislation. It is fair to conclude that the legislature did not have primarily in mind, and did not provide for, any means of securing uniformity with other states. At the time the act was passed there were differences of opinion in different states of the Union as to the wisdom of such legislation, as well as to its proper extent. This state adopted a very liberal act, and it is reasonably to be inferred that the legislature was more concerned with making certain that workmen within its jurisdiction should get all the benefits of the act than it was with any conflicts or legal difficulties which might arise out of lack of uniformity. Our

plain duty is to give to the act its intended effect, and to leave to the legislature the enactment of provisions designed to limit its operation in the interest of uniformity.

It is contended by the appellant that the disposition of this case in Iowa has the force and effect of a judgment, to which this court must give full faith and credit. This might be a valid argument provided the Iowa court had any jurisdiction to effect proceedings under the Wisconsin act. We think it has not such jurisdiction. We concede the jurisdiction of the Iowa commission to determine the rights of the parties under the Iowa act, and we claim the jurisdiction of the Wisconsin commission to determine their rights under the Wisconsin act. It is contended that this may result in double compensation. That question is not properly involved in this case, for the reason that the commission credited the employer with all sums paid under the Iowa act. No complaint is made of this disposition of the case. While it is not necessary in this appeal to pass upon the validity of this procedure, we see no reason why payments made, whether voluntarily or in accordance with the terms of the compensation law of some other state, cannot and should not be credited by the Wisconsin commission. If there is any serious doubt about this, we suggest that it is a matter that might properly be brought to the attention of the legislature.

*By the Court.*—Judgment affirmed.

FRITZ, J., dissents.