TOWN OF RUSSELL VOLUNTEER FIRE DEPARTMENT, c/o Town of Russell and EMC Companies, Plaintiff-Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Gary Prueser (deceased), c/o Jennifer Prueser, and Wisconsin Department of Industry, Labor and Human Relations, n/k/a Wisconsin Department of Workforce Development, Defendants-Respondents.

Court of Appeals

*No. 98–0734. Submitted on briefs November 6, 1998.—Decided December 23, 1998.*

(Also reported in 589 N.W.2d 445.)

†Petition to review denied.

725

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas M. Rohe,* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *James E. Doyle,* attorney general, *Stephen M. Sobota,* assistant attorney general, and *James L. Bartells* of Wausau.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J. The Town of Russell and its worker's compensation insurance carrier, EMC Companies, appeal from a judgment affirming the decision of the Labor and Industry Review Commission (LIRC), which held that Jennifer Prueser was entitled to death benefit compensation for the death of her husband, Gary Prueser. LIRC concluded that Gary was acting within the scope of his employment duties as a member of the Town of Russell Volunteer Fire Department when he awoke to a fire in his home and attempted to save the lives of his family. We agree and, accordingly, affirm.

EMC makes a number of arguments on appeal. First, it argues that the proper appellate standard of review should be de novo. Under this standard, EMC contends the law justifies a reversal of LIRC's decision. Additionally, it argues that the policies underlying the Worker's Compensation Act also merit a reversal of LIRC's decision. EMC's third contention is that LIRC applied an incorrect theory of law in making its decision. And, finally, EMC asserts that case law from

another jurisdiction provides additional support for reversal.

We disagree with all of the arguments EMC makes in support of reversing LIRC's decision. We hold that the issue in this case, whether Gary was acting within the scope of his employment, is a mixed question of law and fact. Therefore, LIRC's decision must be given deference. LIRC's findings of fact in this case, that Gary was acting as a firefighter when he attempted to save his family, are supported by substantial and credible evidence. Therefore, we give complete deference to those findings. In its application of the statute, a question of law, we hold that LIRC must be given great weight deference in this case. Under that standard, we conclude that the legal determination of LIRC in this case, that Gary was acting within the scope of the Worker's Compensation Act when he died, is rational, and therefore must be upheld. As a result, we affirm the decision of LIRC to grant benefits to Jennifer.

The following facts are based on LIRC's decision and the record it relied on. On the night of August 12, 1993, the Prueser family was awakened by a fire in their home. At that time, the Prueser family included Gary, 25, Jennifer, 22, Matthew, 7, Melissa, 6 (who was sleeping at her grandmother's that night), Stephanie, 2, and Lisa, 1. Gary, a firefighter for the Town of Russell Volunteer Fire Department, was the first member of the family to awaken to the smothering heat and smoke in his home. He immediately awoke his wife, Jennifer, and daughter, Lisa, who were in the bed next to him, and they went to get Matthew and Stephanie who were asleep on the couches in the living room. Jennifer told Matthew to go and wait in his bedroom and took Stephanie back to her and Gary's bedroom. At this point, Jennifer had begun to panic.

Gary, who with his volunteer firefighter training was able to maintain control despite the frightening situation, ordered Jennifer and the girls to drop to the floor and crawl to the children's bedroom. Once there, they pressed their noses to the screen window for air. Again, Gary acted by throwing a desk through the window so that Jennifer and the girls could get enough fresh air to breathe. Gary then pounded on the wall of the children's room and yelled to his neighbors that the building was on fire.

It was at this point that Gary and Jennifer began to hear their son Matthew crying and screaming. Gary immediately left the children's bedroom to rescue Matthew who was alone in the fire. The next thing Jennifer heard was a thump in the hallway. It was Gary, who was overcome by the heavy smoke and collapsed. Jennifer tried to pull Gary back to the children's bedroom but was unable to move him.

By now other Town of Russell Volunteer Fire Department members were at the window of the children's bedroom. Jennifer pulled out the two girls, who had crawled under a bed, and handed them to the firefighters. She then led two firefighters, one of whom was Gary's father, to Gary who was still lying in the hallway. Jennifer and Gary were removed from the smoldering building by the firefighters. Gary was never revived and was later pronounced dead at the hospital.

Tragically, the other firefighters were not able to save Matthew. The fire and smoke were too overpowering. He also died in the fire. Jennifer, Stephanie and Lisa survived, but in the span of one night, they had lost two members of their family.

Jennifer filed a claim for worker's compensation death benefits under § 102.475, STATS., and because

EMC initially conceded that Gary's death was due to a work-related injury, DILHR ordered the statutory amount paid. EMC then changed its mind and decided that the benefits should not have been paid. An administrative law judge (ALJ) conducted a hearing and issued a decision in favor of Gary and Jennifer. EMC appealed to LIRC. LIRC reviewed the ALJ's findings and order, and affirmed them. EMC sought review of LIRC's decision under § 102.23(1), STATS., and the circuit court entered judgment affirming LIRC's grant of statutory death benefits. EMC now appeals that judgment.

EMC contends that the issue in this appeal is whether an individual, who awakens to a fire in his or her own home and is killed while attempting to save members of the family, is within the course of his or her duties as an active volunteer firefighter, and therefore acting within the meaning of the Worker's Compensation Act.

On appeal, this court reviews the decisions of the administrative agency, not those of the trial court. *See Wisconsin Pub. Serv. Corp. v. Public Serv. Comm'n*, 156 Wis. 2d 611, 616, 457 N.W.2d 502, 504 (Ct. App. 1990). EMC's first argument pertains to our review of LIRC's decision. It argues that because the issue in this case is one of first impression and requires a purely legal determination, we should exercise de novo review of LIRC's decision. We disagree.

■

Deciding whether an employee is acting within the course of his or her employment under the Worker's Compensation Act is a mixed question of law and fact. *See Michels Pipeline Constr., Inc. v. LIRC*, 197 Wis. 2d 927, 931, 541 N.W.2d 241, 243 (Ct. App. 1995). The conduct of the employee which is at issue presents

questions of fact. *See id.* Application of the statute to that conduct is a legal determination. *See id.*

■ First we deal with the agency's findings of fact. LIRC's findings of fact are conclusive on appeal if they are supported by credible and substantial evidence. *See* § 102.23(6), STATS. Credible evidence is that which excludes speculation or conjecture. *See Bumpas v. DILHR,* 95 Wis. 2d 334, 343, 290 N.W.2d 504, 508 (1980). Evidence is substantial if a reasonable person relying on the evidence might make the same decision. *See Bucyrus-Erie Co. v. DILHR,* 90 Wis. 2d 408, 418, 280 N.W.2d 142, 147 (1979). Because we find that the agency's findings of fact in this case are supported by credible and substantial evidence in the record, we are bound by them.

For this case, the key factual finding by the agency was the determination that Gary was acting as a firefighter—in other words, within the scope of his employment—when he died. The agency relied on a number of facts in making this finding.

First, there is evidence that at the time of the fire Gary was an active member of the volunteer fire department in Russell. All members of that volunteer department were on duty twenty-four hours a day. All volunteer firefighters are required to immediately respond to a 'fire whenever they are confronted with one.

There was also uncontradicted testimony from two witnesses regarding the duties of volunteer firefighters in that department. Robert Kressel, one of Gary's fellow firefighters, testified that members of the department were trained that they should attempt to save lives right away, rather than wait for an officer to arrive at the scene. He testified that it was under this

training that he rushed to the scene when he heard about the fire (he was across the street at the time) and immediately ran into the house to attempt a rescue.

The fire chief, David Jackson, also testified that all members of the Russell fire department are trained to protect life and property first. This is regardless of the department bylaw which says that firefighters should first report to the chief or an officer for orders.

EMC argues that Gary's actions on the night of the fire were the behavior of an ordinary citizen who discovers his children are in danger. However, Jackson also testified that, based on his observations at the scene and his subsequent report, Gary was acting within his duties as a volunteer firefighter as soon as he began rescuing civilians. He believed that Gary acted more responsibly in a panic situation than would a person without the fire training that Gary received on the job. His testimony was also supported by testimony from Jennifer. She testified that she did have some training on what to do in a fire, but she panicked and did not follow those instructions. Rather, it was Gary who acted responsibly and in control throughout the fire.

The agency also heard evidence regarding Gary's actions during the fire which supported its finding that Gary was acting as a firefighter when he died. During the fire, Gary instructed his wife and daughters to crawl on the floor, he broke a window so that they could get air, and he pounded on the wall and yelled to the neighbors that the building was on fire. LIRC found all of these facts regarding Gary's actions to be consistent with his duties as a firefighter. We agree with LIRC.

Both parties attach significance to the fact that Gary pounded on the wall to alert the neighbors. LIRC saw that action as supporting the finding that Gary

was acting as a firefighter on that night. EMC argues that this piece of evidence should instead be interpreted to show that he was acting as an ordinary citizen. We do not evaluate conflicting evidence to determine which interpretation should be accepted. We will affirm if there is credible evidence to support LIRC's inference. *See Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 592–94, 286 N.W.2d 540, 544–45 (1979).

The testimony was heard directly by the agency. LIRC was in a better position to evaluate this evidence and assess the credibility of the witnesses, which is why we defer to it for findings of fact. *See* § 102.23(6), STATS. The agency found that the facts supported the inference that Gary was acting within his training and duties as a volunteer firefighter when he attempted to save the lives of his family. We defer to that finding.

Even if we were reviewing LIRC's findings de novo, we would agree that Gary's pounding on the wall supports the inference that he was trying to alert the neighbors to the fire. We disagree with EMC's argument that asking for help, if that was one of the reasons for Gary's action, is inconsistent with acting as a firefighter. We do not ask firefighters to act alone in their duties.

Based on all of the above, we conclude that LIRC's findings of fact are supported by credible and substantial evidence in the record.

■

LIRC then took all of its findings of fact and applied them to the worker's compensation statute, § 102.03(1), STATS., to make a legal determination that Gary was acting within the scope of the Act when he died. We usually review legal determinations de novo. However, in Wisconsin, courts apply three possible

standards of review to an agency's legal determinations. *See Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991). The first standard is great weight deference, which is applied if the agency's interpretation and application of the law at issue is long standing. *See id.* Under this standard, the agency's decision is only reversed if irrational. *See id.* The second standard of deference is due weight deference. *See id.* at 413–14, 477 N.W.2d at 270. This standard is used if the case is "very nearly" one of first impression. *See id.* The third standard is de novo review, under which the agency's decision is given no weight. *See id.* at 414, 477 N.W.2d at 270–71.

EMC argues that we should apply de novo review because the issue of scope of employment has not previously been decided by LIRC under precisely these facts. Therefore, it believes this is a case of first impression. However, we are not convinced that EMC has specified the correct test for determining the proper standard of review to be applied. The correct test under Wisconsin law is whether LIRC has experience in interpreting a particular statutory scheme, not whether it has ruled on precise, or even substantially similar, facts before. *See Barron Elec. Coop. v. Public Serv. Comm'n*, 212 Wis. 2d 752, 764, 569 N.W.2d 726, 732 (Ct. App. 1997); *see also Video Wis., Ltd. v. DOR*, 175 Wis. 2d 195, 200, 498 N.W.2d 880, 882–83 (Ct. App. 1993). Under EMC's test, deference to an agency would be rare.

We conclude that under the *Barron* test, the proper standard of review to be given to LIRC's legal determinations in this case is great weight deference. The statutory scheme being interpreted by LIRC in this case is ch. 102, STATS. LIRC and its predecessors

have long been charged with the duty of administering that statute. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995). They have developed expertise in interpreting the statute for more than eighty years. *See id.* Therefore, their interpretation of the statute should be given great weight in this case.

■

Applying the great weight standard of review, we conclude that LIRC's legal determinations are not irrational and therefore must be affirmed. It is a rational conclusion that the fact that the citizens Gary was attempting to rescue were his family members should not make any difference in the decision. It also decided that Gary was acting at least in substantial part to further his duties as a volunteer firefighter. Therefore, it concluded that Gary was acting within the statute when he died. We will further discuss the legal analysis applied by LIRC in our discussion of EMC's other arguments for reversal of LIRC's decision.

Next, EMC contends that LIRC's legal determination that Gary was acting within the scope of the Worker's Compensation Act is not supported by the policies behind the Act. We disagree.

■

Public policy determinations are for the legislature, not the courts, to make. *See State v. LIRC*, 136 Wis. 2d 281, 297, 401 N.W.2d 585, 592 (1987). The legislature has written the Worker's Compensation Act as a remedial statute. This public policy determination has already been made. Therefore, Wisconsin courts have stated that this Act should be liberally construed to support compensation. *See Sentinel News Co. v. Industrial Comm'n*, 224 Wis. 355, 360, 271 N.W. 413, 415 (1937). Accordingly, we agree that the policy con-

siderations behind the Act support LIRC's decision to award benefits to the claimant in this case.

In further attacking LIRC's legal analysis, one of EMC's key arguments is that Gary was acting for his own personal motives, was put into the dangerous situation due to personal reasons, and therefore was not acting as an employee when injured. It argues that LIRC erred in its legal analysis by applying the concurrent cause doctrine which deals with dual motives of employees. It contends that another doctrine—the positional risk doctrine—should have been applied instead. This doctrine examines the impetus for causing the employee to be in the situation in which he or she was injured. According to EMC, the positional risk doctrine supports a denial of benefits in this case.

We disagree with EMC's argument that the positional risk doctrine should have been applied in this case. In *Nash-Kelvinator Corp. v. Industrial Commission*, 266 Wis. 81, 86, 62 N.W.2d 567, 570 (1954), the Wisconsin Supreme Court stated that the positional risk doctrine is to be used in analyzing cases in which "the mere conditions and obligations of employment constitute a hazard, distinct from *those cases in which the risk of injury is presented by the employee's regular duties*." (Emphasis added.) *See, e.g., Cutler-Hammer, Inc. v. Industrial Comm'n*, 5 Wis. 2d 247, 254, 92 N.W.2d 824, 828 (1958) (positional risk doctrine applied when employee fell on steps in employer's building); *Applied Plastics, Inc. v. LIRC*, 121 Wis. 2d 271, 278, 359 N.W.2d 168, 172 (Ct. App. 1984) (positional risk doctrine applied when employee was murdered by another employee).

In this case, the risk of injury was precisely caused by the employee's regular duty to save the lives of civilians in a fire. This duty is supported by two

uncontested witnesses. Therefore, this is not a positional risk case.

We also disagree with EMC's argument that LIRC incorrectly applied the concurrent cause doctrine in this case. As stated above, we give great weight deference to LIRC's legal determinations in this case. However, even if that were not the standard of review we were applying here, we agree with LIRC's use of the concurrent cause doctrine.

The ALJ acknowledged that the facts of this case are different from the cases in which employees are traveling for business ("traveling cases"). Traveling cases are where the concurrent cause doctrine is normally found. However, the ALJ decided that the concurrent cause doctrine could be used for guidance on how courts should deal with mixed motive cases. Because EMC argues that Gary was motivated by his love for his family rather than by his employment duties, we agree that the concurrent cause doctrine can be used for guidance here.

Under the concurrent cause doctrine, service to the employer does not have to be the sole cause for the employee's actions. *See Sauerwein v. DILHR*, 82 Wis. 2d 294, 303, 262 N.W.2d 126, 131 (1978). It only needs to be a concurrent cause of the actions which cause the injury for the employee to be covered by the Worker's Compensation Act. *See id.*

Under this doctrine, EMC argues that Gary's only motivation was his duty as a father. It assumes that even if Gary had not been an active member of the volunteer fire department, he would have taken exactly the same course of action. This is only an assumption, unsupported by the evidence. LIRC decided that Gary was acting as both a father and a firefighter when he was killed. We defer to that finding

of fact. We also agree with the agency's legal analysis that fulfilling his duties as a firefighter was at least a concurrent cause of Gary's actions.

Finally, EMC contends that because there are no Wisconsin cases dealing with precisely this set of facts, we should be guided by three Pennsylvania cases. However, Wisconsin courts have long recognized that Wisconsin's Worker's Compensation Act has its own set of policy values unassociated with other states' worker's compensation statutes. *See Interstate Power Co. v. Industrial Comm'n*, 203 Wis. 466, 477–78, 234 N.W. 889, 893–94 (1931). Wisconsin adopted a very liberal act and was not primarily concerned with making its law uniform with the worker's compensation statutes of other states. *See id.* at 477, 234 N.W. at 893. Therefore, we decline to take guidance here from other states' case law in interpreting our own Worker's Compensation Act.

To illustrate this point, all three Pennsylvania cases deal with a statute which specifically discusses the situation of a volunteer firefighter. *See Lees v. State Workmen's Ins. Fund*, 22 A.2d 61, 64 (Pa. Super. Ct. 1941); *Obrzut v. Borough of Olyphant*, 188 A.2d 764, 765 (Pa. Super. Ct. 1963); *Delahunty v. Township of Lower Chichester*, 25 A.2d 90, 91 (Pa. Super. Ct. 1942). The Pennsylvania legislature has made a policy determination with regard to that kind of employee. Wisconsin's statute does not have such a provision. Therefore, these Pennsylvania cases would not be helpful to our analysis.

In addition, each worker's compensation case turns on its facts. *See generally Glodowski v. Industrial Comm'n*, 11 Wis. 2d 525, 530, 105 N.W.2d 833, 836–837 (1960). Thus, completely relying on the holdings of any of the Pennsylvania cases would not be proper. For the

same reason, we also find no use for dealing with any of the hypothetical situations posed by the appellants. We are deciding this case based on the facts posed here. Other factual situations may lead us to a different result.

This need for case-by-case review is also why we decline EMC's invitation to declare a bright-line rule for determining when an on-call employee is acting within a personal versus a professional role. Worker's compensation cases are highly dependent on the specific facts involved. *Cf. id.* (stating that even if cases have very similar facts, it does not necessarily mean the same outcome will be determined in those cases). For this reason, other Wisconsin courts have also declined to adopt bright-line rules in the worker's compensation context. *See School Dist. No. 1 v. DILHR*, 62 Wis. 2d 370, 378, 215 N.W.2d 373, 377–78 (1974).

In conclusion, we hold that the determination of whether Gary was acting within the scope of his employment at the time of his death is a mixed question of law and fact that we review with deference to LIRC's decision. Additionally, we agree with LIRC's application of the policies behind the Worker's Compensation Act and also agree that the agency applied the correct legal doctrine in this case. As a result, we affirm.

*By the Court.*—Judgment affirmed.