COUNTY OF BARRON and Wisconsin County Mutual
Insurance Corporation, Petitioners-Appellants,

v.

LABOR AND INDUSTRY REVIEW COMMISSION and
Darlene Cobb, Respondents-Respondents.

Court of Appeals

*No. 2009AP1845. Submitted on briefs June 1, 2010.*
*—Decided October 19, 2010.*

2010 WI App 149

(Also reported in 792 N.W.2d 584.)

205

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Richard D. Duplessie* and *Ryan J. Steffes*, of *Weld, Riley, Prenn & Ricci, S.C.*, Eau Claire.

On behalf of the respondent-respondent, Darlene Cobb, the cause was submitted on the brief of *Jason W. Whitley* of *Novitzke, Gust, Sempf, Whitley & Bergmanis*, Amery.

On behalf of the respondent-respondent, Labor and Industry Review Commission, the cause was submitted on the briefs of *Richard Briles Moriarty*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

A nonparty brief was filed by *Andrew T. Phillips* and *Daniel J. Borowski* of *Centofanti Phillips, S.C.*, Mequon, for Wisconsin Counties Association.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. County of Barron and its insurer, Wisconsin County Mutual Insurance Corporation (collectively, the County), appeal a judgment affirming the Labor and Industry Review Commission's conclusion that an in-home caregiver providing services under the long-term support community options waiver program is an employee of the County for worker's compensation purposes. We conclude the Commission's decision is entitled to great weight deference. Because the Commission's conclusion is reasonable, and the facts upon which that conclusion was based are supported by credible and substantial evidence, we affirm.

## BACKGROUND

¶ 2. Francis Budlowski is a quadriplegic. He is a service recipient under the long-term support community options waiver program (COP-W program), a Medicaid waiver program that permits individuals in need of long-term support to receive care in a home or community setting rather than an institution. *See* WIS. STAT. § 46.27(11).[1] Care under the COP-W program is financed using state and federal Medicaid funds.

¶ 3. County participation is critical to the COP-W program's implementation; counties must arrange services contracts, ensure the provision of necessary care, and provide assessment services, ongoing care manage-

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

ment services, periodic case plan review, and follow-up services. *See* WIS. STAT. § 46.27(5). Each county is required to participate in the program. WIS. STAT. § 46.27(8). Barron County is responsible for administering the COP-W program to Budlowski.

¶ 4.   In 1999, Budlowski selected Darlene Cobb as his COP-W service provider. Cobb lives in Budlowski's residence and attends to all of his basic needs; among other things, Cobb prepares his meals, bathes him, transfers him from his bed to his wheelchair, takes him grocery shopping, and ensures he takes his medication.

¶ 5.   On May 2, 2006, Cobb fell and fractured her arm while making a bed in Budlowski's home. Her doctor rated the extent of her permanent disability as twelve percent at the shoulder. Cobb reported her injury to Barron County, which asserted she was not an employee and rejected her worker's compensation claim. Budlowski does not maintain a worker's compensation insurance policy.

¶ 6.   Cobb applied to the department of workforce development for a hearing to determine whether she was the County's employee. The department took the testimony of Cobb, Budlowski, and Barron County department of health and human services employees Jill Keefer and Tonya Eicheldt.[2] After reviewing the evidence and past Commission decisions, the department concluded Barron County employed Cobb and awarded her benefits.

¶ 7.   The County sought review from the Commission. The Commission found that, although the County

---

[2] Jill Keefer is a social worker for the Barron County Department of Health and Human Services. Tonya Eicheldt is Keefer's supervisor and manages the COP-W program for Barron County.

208

and Budlowski exercised control over different aspects of Cobb's duties, the County's administration of the COP-W program gave rise to an employment relationship:

> As administrator of the program, and as direct provider of the program funds, Barron County had the primary "right" to control the details of [Cobb's] work. . . . Barron County exercised that control by setting [Cobb's] wage rate, making a discretionary decision to continue payment to [Cobb] during a period when Budlowski was hospitalized, requiring that a fiscal agent be chosen for receipt and disbursement of funds, and regularly sending a social worker to Budlowski's home to check on the quality of care that he received.

The Commission affirmed the department's findings and order.

¶ 8. In its written order, the Commission expressed some sympathy for the County's position, noting that neither federal nor state agencies provide funds for worker's compensation coverage and that both "have left the counties to fend for themselves regarding this important aspect of any home-based, primary care program." The Commission noted, however, that this was a policy matter. "From a legal perspective in this case," the Commission wrote, "it is clear that the primary right to control [Cobb's] performance of services for Budlowski . . . [was] in the hands of Barron County."

¶ 9. The circuit court affirmed. It declined the County's invitation to review the Commission's decision de novo, instead applying the great weight deference standard after finding the Commission had consistently applied the test for determining whether an employer-employee relationship exists for worker's compensation purposes. *See Kress Packing Co. v. Kottwitz*, 61 Wis. 2d

175, 182, 212 N.W.2d 97 (1973). The court determined the Commission's findings of fact were sufficient to conclude Cobb was an employee of the County.

## DISCUSSION

■

¶ 10.   When reviewing a worker's compensation claim, we review the Commission's decision, not that of the circuit court. *County of Dane v. LIRC*, 2009 WI 9, ¶ 14, 315 Wis. 2d 293, 759 N.W.2d 571. Our review of the Commission's award is circumscribed by WIS. STAT. § 102.23(1)(e), which requires that we affirm the award unless the Commission acted without or in excess of its powers, the award was procured by fraud, or the Commission's findings of fact do not support the award. We will overturn factual findings only if they are not supported by credible and substantial evidence. WIS. STAT. § 102.23(6). We will not substitute our judgment for that of the Commission as to the weight or credibility of the evidence. *Id.*

■

¶ 11.   Whether Cobb was an employee of the County is a question of law to be determined by the application of well-defined rules to the facts. *See Kress Packing*, 61 Wis. 2d at 177. In general, an employee is defined as any person "in the service of another under any contract of hire, express or implied . . . if employed with the knowledge, actual or constructive, of the employer . . . ." WIS. STAT. § 102.07(4)(a). But related statutes make clear that the key to defining an employee is the concept that an employee is in the service of another in the course of a trade, business, profession or occupation of an employer. *Acuity Mut. Ins. Co. v. Olivas*, 2007 WI 12, ¶ 84, 298 Wis. 2d 640, 726 N.W.2d

210

258 (quotation omitted) (referring to Wis. Stat. §§ 102.07(4)(a)2. and 102.07(8)(a)). Thus, our focus becomes whether an employer-employee relationship was established between Cobb and the County.

¶ 12. The test established in *Kress Packing*, 61 Wis. 2d at 177, governs the existence of an employer-employee relationship.[3] The primary test for determining the existence of an employer-employee relationship is "whether the alleged employer has a right to control the details of the work . . . ." *Id.* at 182. In making this determination, four secondary factors are considered: (1) direct evidence of the exercise of the right of control; (2) the method of payment of compensation; (3) the furnishing of equipment or tools for the performance of the work; and (4) the right to fire or terminate the employment relationship. *Id.*

¶ 13. In this case, the Commission's application of the *Kress Packing* test led it to conclude that Cobb was an employee of the County. An important principle of administrative law is that, in recognition of the expertise and experience of an agency, a court will, in certain circumstances, defer to the agency's conclusion. *Brown v. LIRC*, 2003 WI 142, ¶ 12, 267 Wis. 2d 31, 671 N.W.2d 279. "The appropriate level of scrutiny a court should use in reviewing an agency's decision on questions of

[3] In *Acuity Mutual Insurance Co. v. Olivas*, 2007 WI 12, ¶ 87, 298 Wis. 2d 640, 726 N.W.2d 258, our supreme court recognized that although "the test [established in *Kress Packing Co. v. Kottwitz*, 61 Wis. 2d 175, 182, 212 N.W.2d 97 (1973),] has been supplanted by Wis. Stat. § 102.08(b) for deciding independent contractor status[,] . . . the *Kress Packing* test continues to have vitality in determining whether a person is an employee under Wis. Stat. § 102.07(4)(a)."

law depends on the comparative institutional capabilities and qualifications of the court and the agency to make a legal determination on a particular issue." *Id.*, ¶ 13.

¶ 14.   In *Brown*, our supreme court discussed the three levels of deference potentially applicable to review of an administrative agency's conclusions of law:

> No deference is due an agency's conclusion of law when an issue before the agency is one of first impression or when an agency's position on an issue provides no real guidance. When no deference is given to an administrative agency, a court engages in its own independent determination of the questions of law presented, benefiting from the analyses of the agency and the courts that have reviewed the agency action.
>
> Due weight deference is appropriate when an agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than a court to interpret and apply a statute. Under the due weight deference standard[,] a court need not defer to an agency's interpretation which, while reasonable, is not the interpretation which the court considers the best and most reasonable.
>
> Great weight deference is appropriate when:   (1) an agency is charged with administration of the particular statute at issue; (2) its interpretation is one of long standing; (3) it employed its expertise or specialized knowledge in arriving at its interpretation; and (4) its interpretation will provide uniformity and consistency in the application of the statute. In other words, when a legal question calls for value and policy judgments that require the expertise and experience of an agency, the agency's decision, although not controlling, is given great weight deference.

*Id.*, ¶¶ 14–16 (footnotes and citations omitted).

212

¶ 15. The County contends the Commission's determination is entitled to no deference because the agency's past decisions provide no real guidance to future litigants. The County primarily relies on *County of Dane*, in which our supreme court declined to give any deference to the Commission's conclusion that an injured individual's limp constituted a permanent disfigurement under Wis. Stat. § 102.56(1) (2005–06). *County of Dane*, 315 Wis. 2d 293, ¶ 20. When first confronted with the issue in 1986, the Commission concluded a limp was a disfigurement, but reversed course in 1994. *Id.*, ¶¶ 6–7. Our supreme court held, "[B]y concluding that a limp is, and then is not, a disfigurement under § 102.56(1), [the Commission] demonstrates that even though this issue is not one of first impression, its decisions provide no real guidance." *Id.*, ¶ 20.

¶ 16. The County contends the Commission has been similarly inconsistent when applying the *Kress Packing* test to in-home caregivers providing services under the COP-W program. It points to three Commission decisions in support of its claim: *Ambrose v. Harley Vandeveer Family Trust*, Claim No. 8639393 (LIRC Feb. 28, 1989); *Nickell v. County of Kewaunee*, Claim No. 94064155 (LIRC Sept. 24, 1996); and *Bunnell v. County of Douglas*, Claim No. 95007425 (LIRC Jan. 30, 1997).

¶ 17. In *Ambrose*, a disabled individual received primary care from her sister, who was injured while rendering care and filed a claim for worker's compensation against the family trust that paid her wages. The Commission found the disabled individual was able to manage her personal affairs and had hired her sister as caregiver, arranged for her sister's payment, and controlled her sister's duties. The Commission concluded

213

the family trust "merely acted as conservator and manager of the trust funds," and did not employ the sister.

¶ 18. *Nickell* involved a worker's compensation claim by a caregiver under the COP-W program. The Commission, noting facts cutting both for and against a finding that Nickell was an employee of the county, acknowledged that the status of a COP-W caregiver presented a more difficult question than that of the caregiver in *Ambrose*:

> The record indicates that some eligible service recipients under the [COP-W program] choose their own personal care workers, and then apply to the county for payment. In this case, Ms. Kostichka [the disabled individual] had chosen the applicant's predecessor, but when that woman left Ms. Kostichka simply asked the county for a referral. In addition, the applicant herself went to the county to find placement as a personal care worker, the county required her to be trained, the county placed her in assignments with many different eligible service recipients over a period of several years, and the county employs people to act as supervisors of personal care workers.
>
> Moreover, the applicant's rate of pay was set by the county, and she was paid, through [a] fiscal intermediary [selected by the county] . . . from funds he received from the county . . . .
>
> On the other hand, of course, the applicant testified that the county instructed her to do whatever the eligible service recipients wanted her to do. Moreover, the county's witness testified that the county would not fire the personal care workers.

Applying the *Kress Packing* factors to these facts, the Commission concluded Nickell was an employee of the county.

¶ 19. *Bunnell* is the final case the County cites to demonstrate the Commissions alleged inconsistency. In that case, the Commission applied the *Kress Packing* test to conclude that the service provider was an employee of the county:

> In this case, [the service recipients] controlled many of the details of the provision of services by the applicant. On the other hand, the applicant testified he did not have any contact with [one service recipient] before he worked for him, and that he was referred [to that recipient by] the community options program director. Program coordinator Grandstrom testified that training was required under the community options program, and that this was provided by case managers. Considering the record in this case in light of the Kress factors and its holding in Nickell, the commission concludes that the applicant was the employe[e] of Douglas County at the time of his injury ....

¶ 20. The County contends *Ambrose, Nickell,* and *Bunnell* leave interested parties with no way of knowing how the Commission will apply the *Kress Packing* factors in future cases. Broadly speaking, the County is correct; to the extent a future case differs, even minimally, from a case previously decided, an interested party cannot know precisely what weight the Commission or a judicial tribunal will give that variance. Our supreme court has acknowledged that the *Kress Packing* test is "fact-specific," and different facts will often give rise to different conclusions. *See Olivas,* 298 Wis. 2d 640, ¶ 89.

¶ 21. Yet the fact-specific nature of the *Kress Packing* inquiry does not suggest that the Commission's decisions have left interested parties with no guidance. In *County of Dane,* the Commission provided no real

215

guidance because it adopted, then abandoned, a legal conclusion. By contrast, the Commission has consistently applied the *Kress Packing* test to determine the existence of an employer-employee relationship. It has also looked for guidance to its prior decisions applying that test. Although the Commission has been confronted with different facts on each occasion, application of great weight deference does not depend on "whether [the Commission] has ruled on precise, or even substantially similar, facts before." *Town of Russell Volunteer Fire Dept v. LIRC*, 223 Wis. 2d 723, 733–34, 589 N.W.2d 445 (Ct. App. 1998); *see also MercyCare Ins. Co. v. Wisconsin Comm'r of Ins.*, 2010 WI 87, ¶¶ 34, 328 Wis. 2d 110, 786 N.W.2d 785 (confirming *Russell*).

¶ 22. Instead, the Commission's experience applying the *Kress Packing* test, and, more broadly, determining whether an employer-employee relationship exists, leads us to conclude its decision is entitled to great weight deference. "[The Commission] and its predecessors have long been charged with the duty of administering Chapter 102 and have exercised their expertise in analyzing and interpreting its various sections for over [90] years."[4] *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995). The Commission repeatedly defined the scope of the employer-employee relationship in the decades following the

---

[4] Our supreme court recently clarified, however, that an agency conclusion is not entitled to great weight deference simply because the agency has experience administering a particular statutory scheme. *MercyCare Ins. Co. v. Wisconsin Comm'r of Ins.*, 2010 WI 87, ¶¶ 34–35, 328 Wis. 2d 110, 786 N.W.2d 785. Instead, great weight deference is afforded only when the agency has experience interpreting the particular statutory language at issue. *Id.*

enactment of the workers compensation laws. *See, e.g., City of Superior v. Industrial Comm'n,* 160 Wis. 541, 544–45, 152 N.W. 151 (1915); *Pierce v. Barker,* 179 Wis. 189, 190–92, 190 N.W. 80 (1922); *Rice Lake Golf Club v. Industrial Comm'n,* 215 Wis. 284, 254 N.W. 530 (1934).

¶ 23. As the *Kress Packing* test was taking shape in our courts, so too was the Commission developing expertise and experience in its application. *Cf., e.g., Scholz v. Industrial Comm'n,* 267 Wis. 31, 64 N.W.2d 204 (1954) (in a case preceding *Kress Packing,* affirming Commission's application of governing law); *see also Enderby v. Industrial Comm'n,* 12 Wis. 2d 91, 106 N.W.2d 315 (1960), and *Ace Refrigeration Heating Co. v. Industrial Comm'n,* 32 Wis. 2d 311, 145 N.W.2d 777 (1966). Since *Kress Packing* was decided, we have applied great weight deference to the Commission's decisions under that test. *See, e.g., Klusendorf Chevrolet-Buick, Inc. v. LIRC,* 110 Wis. 2d 328, 331–32, 328 N.W.2d 890 (Ct. App. 1982); *see also Labor Ready, Inc. v. LIRC,* 2005 WI App 153, 8, 285 Wis. 2d 506, 702 N.W.2d 27 (acknowledging Commission's long experience determining the existence of an employer-employee relationship, but reviewing de novo an issue of first impression). At this point, there can be no dispute that the Commission has developed a long-standing interpretation of the rules governing the employer-employee relationship and has used its expertise and specialized knowledge in crafting that interpretation. Contrary to the County's claim, the Commission's interpretation of WIS. STAT. § 102.07 and related statutes provides uniformity and consistency. Accordingly, the Commission's conclusion that Cobb is a County employee is entitled to great weight deference,

and will be upheld if it is reasonable.[5] *See MercyCare Ins. Co.*, 786 N.W.2d 785, ¶ 31.

¶ 24.   The facts as established at the department hearing support the Commission's conclusion. Finding his prior caregivers "meddlesome," Budlowski elected to participate in the COP-W program and selected Cobb as his service provider. At the County's direction, Budlowski hired a fiscal agent to manage his receipt of federal and state funds. Cobb's wages are drawn from the fiscal agent account in an amount established by the County. Budlowski has no control over Cobb's wage, and no discretion to spend money in the fiscal agent account. All matters regarding Cobb's compensation are directed to the County.[6]

¶ 25.   Under the COP-W program, the County has the responsibility to ensure Budlowski is adequately cared for. As required by the COP-W program, the County developed an individual service plan for Budlowski and periodically reviewed it with him. Budlowski's social worker, Jill Keefer, testified she would occasionally visit Budlowski in his home to

<hr>

[5] Generally, we independently review the application of prior case law to the set of undisputed facts presented. *See Doering v. LIRC*, 187 Wis. 2d 472, 477–78, 523 N.W.2d 142 (Ct. App. 1994). However, we will refuse to give deference to an agency's conclusion only if it directly conflicts with prior case law. *Id.* The County does not contend the Commission's decision here directly conflicts with *Kress Packing*, only that the Commission misapplied the test outlined in that decision to the facts of this case. Accordingly, the general rule of *Doering* must give way to the experience and expertise of the Commission here.

[6] For example, Cobb requested a raise from the County, not from Budlowski. Cobb also sought compensation from the County during a time when Budlowski was hospitalized and did not require in-home care.

determine whether his needs were being met. On one such visit, Cobb testified that Keefer identified both herself and Budlowski as Cobb's boss.[7] Cobb believed this meant that if Keefer was dissatisfied with an element of care, she could direct Cobb to make a change. The Commission determined that, under *Kress Packing*, these facts demonstrated the County had a right to control the details of the work.

¶ 26. To be sure, not all the facts adduced at the department hearing support the Commission's conclusion. For example, Budlowski controlled the manner and timing of most daily tasks like meal preparation and cleaning. Budlowski selected Cobb as the service provider, and both Budlowski and Cobb considered him to be her employer.[8] Budlowski undisputedly has the power to terminate Cobb's employment.

¶ 27. The Commission found these facts insufficient to change "the credible inference that Barron

---

[7] When asked during the Department hearing, Keefer stated she could not recall saying Cobb has two bosses. However, "it is the function of the hearing examiner, not the reviewing court, to determine the credibility of witnesses and the weight of the evidence." *Kitten v. DWD*, 2001 WI App 218, ¶ 20, 247 Wis. 2d 661, 634 N.W.2d 583, *aff'd*, 2002 WI 54, 252 Wis. 2d 561, 644 N.W.2d 649. The hearing examiner accepted Cobb's testimony when finding that Cobb's services were supervised by the County.

[8] Our supreme court has cautioned against placing too much stock in a witness's conclusion of law. A witness's conclusion of law is tested against the combined force of the remaining evidence. *St. Mary's Congreg. v. Industrial Comm'n*, 265 Wis. 525, 531, 62 N.W.2d 19 (1953); *see also Scholz v. Industrial Comm'n*, 267 Wis. 31, 39, 64 N.W.2d 204 (1954) ("[I]n each case we must determine exactly what the status of the man is and [the rule is] that what he is represented to be or held out to be or insured to be, is not in any sense controlling.").

County was full in control of the [COP-W program]." It further found that "had the social worker who regularly checked up on Budlowski been sufficiently dissatisfied with the quality of care provided by [Cobb], Barron County could have stopped funding [Cobb's] wage and thereby effected her termination." The Commission determined that the County's oversight role "did constitute supervision of [Cobb's] performance of services."

¶ 28. "Where there are two conflicting views of the evidence, each of which may be sustained by substantial evidence, it is for the hearing examiner to determine which view of the evidence it wishes to accept." *Kitten v. DWD*, 2001 WI App 218, ¶ 19, 247 Wis. 2d 661, 634 N.W.2d 583, *aff'd*, 2002 WI 54, 252 Wis. 2d 561, 644 N.W.2d 649. We will sustain an agency's conclusion of law even if an alternative view is just as reasonable or even more reasonable. *Brown*, 267 Wis. 2d 31, 19. The Commission's findings of fact are supported by credible evidence, and its legal conclusions based upon those findings are reasonable.

¶ 29. The Wisconsin Counties Association, appearing as amicus curiae, argues the Commission's decision reflects a misunderstanding of the County's legal rights and responsibilities under the COP-W program. The Association predicts dire consequences for Wisconsin's counties, asserting that counties will be forced to maintain worker's compensation insurance on hundreds of home care service providers "even though the counties have no employment relationship with these providers and no right to control the details of the service providers' work." To demonstrate this lack of control, the Association advances a legal argument distinct from that of the County and ranging well beyond the facts of this case.

¶ 30. We find the Association's brief unpersuasive for several reasons. First, the Association takes the position that when a service recipient elects a self-directed regimen of home-based care, the service provider can never be a county employee for worker's compensation purposes. The County has not taken this position on appeal, and courts need not consider arguments raised only by amici. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 850 n.5 (9th Cir. 2003); *Wyoming Farm Bureau Fed. v. Babbitt*, 199 F.3d 1224, 1230 n.2 (10th Cir. 2000); *cf. Reno v. Koray*, 515 U.S. 50, 55 n.2 (1995) (amicus argument not properly before Court where respondent abandoned it on appeal).

¶ 31. Second, the Association's policy argument, while illuminating, is ultimately not a basis upon which we may reverse the Commission's decision. In fact, "[w]here legal questions are intertwined with policy decisions, we should defer to the agency responsible for determining policy. *State v. Devore*, 2004 WI App 87, 12, 272 Wis. 2d 383, 679 N.W.2d 890. We are mindful that our decision may have financial implications for Wisconsin counties, but, as the Commission indicated, that is a problem appropriately addressed to state and federal funding sources.

¶ 32. Finally, the Association's argument is premised on findings contrary to those made by the Commission. Without discussing the applicable standard of review, the Association asserts counties have no employment relationship with, and no right to control the work of, in-home service providers. The Commission reached opposite conclusions. As we have established, those conclusions are reasonable, and the facts upon

221

which they are based are supported by credible and substantial evidence. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.