OUTDOOR ADVERTISING ASSOCIATION OF TENNESSEE, INC., et al., Plaintiffs-Appellants,

v.

Eddie SHAW, Commissioner of Transportation, State of Tennessee, Defendant-Appellee.

Court of Appeals of Tennessee, Middle Section.

Nov. 30, 1979.

Certiorari Denied by Supreme Court March 31, 1980.

Richard D. Speight, Goodpasture, Carpenter & Woods, Nashville, for plaintiffs-appellants.

Donald L. Corlew, Asst. Atty. Gen., Nashville, for defendant-appellee.

TODD, Judge.

The plaintiffs, Outdoor Advertising Association of Tennessee, Inc., Cannon Advertising Company and Creative Displays, Inc., have appealed from the Chancellor's decree dismissing their suit against the State Commissioner of Transportation for a declaratory judgment as to certain duties of the State Department of Transportation, for an order requiring certain actions by the department and for damages.

The Chancellor sustained defendant's motion to dismiss the complaint because it failed to state a claim upon which relief can be granted, lack of jurisdiction of the subject matter and improper venue.

The complaint alleges:

1. Cannon and Creative own billboards adjacent to interstate and primary highways in Tennessee which have been licensed by the State of Tennessee.

2. The Association is an organization of billboard owners.

3. The Department has failed to comply with existing State and Federal law requiring the purchase of certain "nonconforming" billboards.

4. The Department has "planted or permitted" trees and bushes on highway rights of way which obstruct the visibility of the billboards of plaintiffs resulting in monetary loss to plaintiffs and amounting to a constructive taking of such billboards.

The complaint relies upon the Highway Beautification Act of 1965, 23 U.S.C. § 131, the Tennessee Billboard Regulation and Control Act of 1972, as amended in 1975 and 1976, T.C.A. §§ 54–2601 et seq., and undesignated portions of the Constitutions of the United States and Tennessee.

The relief sought in the complaint includes:

1. An order requiring the expeditious and orderly acquisition of non-conforming advertising structures under the provisions of the applicable federal and state law.

2. A declaratory judgment that planting or permitting vegetation on highway rights of way obstructing licensed billboards is unlawful and unconstitutional.

3. Judgment in favor of Creative and Cannon for their damages.

First, Cannon and Creative insist upon damages for the constructive taking of specified billboards belonging to them. The details of the "taking" of the various billboards of plaintiffs are set out in the complaint as follows:

. . . Under the state Act, outdoor advertising structures are licensed and taxed, and all owners are required to apply for and receive permits and tags for their existing structures and to secure permits and tags for structures built after the enactment of the state Act. These permits and tags cost five dollars each, and are renewable annually. . . The state, through its agents, inspects each sign prior to approval. Thus, the State of Tennessee knows about, licenses and inspects each and every outdoor advertising structure, conforming or non-conforming, permitted under the Highway Beautification Act of 1965 and/or the Billboard Control Act of 1972.

. . . On or about March 1, 1976, the advertiser cancelled its contract to rent this structure because the view of the structure from the interstate highway was obstructed by the growth of trees and bushes planted or permitted on the right-of-way. . . . As a result of this obstruction, this sign structure as an advertising medium at its present location is now non-productive and without value to Creative Displays, Inc.

(As to another billboard) . . . On or about April 7, 1978, the advertiser threatened to cancel its contract to rent this structure because the view of the struc-

ture from the interstate highway is becoming obstructed by the growth of trees and bushes planted or permitted on the right-of-way. . . . The sign is now at its maximum permissable height. If cancelled by Holiday Inns, this advertising structure at its present location will be non-productive and without value to Creative Displays, Inc.

(As to another billboard) . . . On or about November 1, 1976 the advertiser cancelled its contract to rent this structure because the view of the structure from the interstate highway was obstructed by the growth of trees and bushes planted or permitted on the right-of-way. . . . As a result of this obstruction, this sign structure as an advertising medium at its present location has become non-productive and without value to Cannon Advertising Company. (As to another billboard) . . . On or about January 1, 1977, the advertiser threatened to cancel its contract to rent this structure because the view of the structure from the interstate highway was becoming obstructed by the growth of trees and bushes planted or permitted on the right-of-way. Cannon Advertising Company had to spend the sum of four thousand dollars ($4,000.00) to raise the height of the structure so that the face would be visible from the interstate highway over the trees and bushes.

. . . Complainants further aver upon belief that the vast majority of trees and bushes which now obstruct or will soon obstruct state-licensed sign structures along interstate and primary rights-of-way were planted in their present locations using those funds allocated to Tennessee under 23 U.S.C. 319, with full knowledge on the part of the state that state inspected, licensed and approved sign structures were located adjacent to the rights-of-way. Those trees and bushes which were already existing when the highways were built or which have grown wild are being left on said right-of-way and maintained with federal funds, with full knowledge on the part of the state that state inspected, licensed and approved sign structures are adjacent to said rights-of-way. Thus, the same entity which inspects, licenses and approves the sign structures pursuant to the Highway Beautification Act of 1965 plants and maintains trees and bushes under the same Act to block, obstruct and render non-productive these licensed sign structures. Complainants believe that there is no state program for the orderly pruning of trees and bushes or the systematic planting of same in such a way as to avoid obstructing existing advertising structures.

. . . . .

Complainants aver that the planting of bushes and trees on the interstate highway and primary highway rights-of-way, and/or the maintenance of existing or wild trees and bushes, in such a way as to obstruct state inspected, licensed and approved sign structures and render them non-productive constitutes a constructive condemnation of those structures without just compensation, in violation of the United States Constitution, the Constitution of Tennessee, 23 U.S.C. 131, and T.C.A. 54–2601, *et seq.*

It is arguable that the complaint alleges that the officials of the State of Tennessee have designed and carried into effect a calculated plan of planting trees and shrubs and of refraining from pruning planted and wild trees and shrubs *only* where such plants would obstruct the view of plaintiffs' billboards for the unjust purpose of avoiding the necessity of paying for the removal of the billboards. However, close inspection discloses that no such accusation is made in the complaint. There is an allegation that such conduct would constitute a taking, but there is no allegation that such conduct has indeed occurred. The only allegation of actual conduct is the *general* planting and *general* failure to prune vegetation on the highway rights of way.

It is alleged that the trees and shrubs obstructing the view of plaintiffs' billboards were either planted by the State or "are

being left . . . and maintained" by the State; also that the State has no program for the orderly pruning of vegetation or the planting thereof in such a way as to avoid obstructing billboards. There is no allegation that the State has selectively planted and refrained from pruning *only* in front of billboards. On the contrary, the allegation is that the State has, in some manner, committed a wrong by failing to provide selective pruning and failing to selectively avoid planting in front of billboards.

In the absence of any allegation of any discriminatory, selective action or inaction of the State, aimed specifically at billboards, the question at this point is:

Where the State of Tennessee plants vegetation on its right of way and fails to prune vegetation on its right of way in a general and non-discriminatory manner and such vegetation eventually obscures a billboard so as to render it useless, has there been a constructive taking of the billboard for which the owner is entitled to compensation?

Appellant insists:

"The express and unequivocal Congressional intent embodied in 23 U.S.C. 131 is that just compensation must be paid by states whenever lawfully existing advertising signs are taken or when an existing and reasonable use of the land for advertising purposes is restricted."

This Court has searched the cited act and finds nothing therein which creates a special right to damages in the owners of billboards obscured by highway vegetation. Said act provides:

(g) Just compensation shall be paid upon the *removal* of any outdoor advertising sign, display, or device lawfully erected under State law. The Federal share of such compensation shall be 75 per centum. Such compensation shall be paid for the following:

(A) The *taking from the owner of such sign*, display, or device of *all right, title leasehold*, and *interest* in such sign, display, or device; and

(B) The *taking from the owner of the real property* on which the sign, display, or device is located, of the *right to erect and maintain such signs*, displays, and devices thereon. (Emphasis supplied)

. . . . .

(n) No sign, display, or device shall be required to be *removed* under this section if the Federal share of the *just compensation* to be paid *upon removal* of such sign, display, or device is not available to make such payment. (Emphasis supplied)

Only sections (g) and (n), quoted above, bear any relationship to the compensation of sign owners. Section (g) refers to just compensation for *removal*, and payment of compensation for "taking . . . all right, title, leasehold and interest" of the owner and "taking . . . the right to erect and maintain such signs" from the owner of the land. Section (n) provides for compensation "upon removal."

■ This Court is unable to discern in the cited statute any intent that sign owners or property owners be compensated for any impairment of the visibility of signs or other interference from their usefulness short of "removal", or "taking *all right, title or interest*", in the sign or "all right to erect or maintain" a sign on land.

Appellants quote Section 401 on Title IV of the Highway Beautification Act of 1965, P.L. No. 89–285, § 401. 79 Stat. 1028:

"Sec. 401. Nothing in this Act or the amendments made by this Act shall be construed to authorize private property to be taken or the reasonable and existing use restricted by such taking without just compensation as provided in this Act."

Title I of said Act is the text of 23 U.S.C. 131, already discussed; Title II relates to control of junkyards; Title III relates to landscaping and scenic enhancement; and Title IV consists of the quoted Section 401, an appropriation for administrative funds and a section naming the Act. Title IV, Section 401 refers to actions taken under Title I, II and III, and does not refer specifically to billboards. This Court does not interpret Section 401 to *enlarge* rights of

owners of private property, but only to *preserve* such rights as such owners already had. That is to say, such rights as billboard owners had prior to the passage of the Act were not in any way restricted or curtailed, but there is no indication of the creation of new rights.

In *Lewisburg & N. R. Co. v. Hinds*, 134 Tenn. 293, 183 S.W. 985, L.R.A. 1916E 420 (1915) it was held that, under the common law where no part of a property is condemned, the owner has no right of compensation for the necessary annoyance or inconvenience necessarily arising from the normal use and operation of a railroad.

In *Ledbetter v. Beach*, 220 Tenn. 623, 421 S.W.2d 814 (1967), owners sued the county for damages because a highway recently constructed ten (10) feet from their property line interfered with the peaceful and quiet enjoyment of their new home. The Supreme Court sustained a demurrer and said:

Article I, sec. 21, of the Constitution of Tennessee, which provides for compensation for the taking of property for public use reads as follows:

"Sec. 21. No man's services or property taken without consent or compensation. That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Vol. 1, T.C.A. p. 339.

Clearly, this section does not provide for damages such as are here sued for, only providing for compensation for property taken or applied to public use. 220 Tenn. 628, 421 S.W.2d 816.

In *United States v. Indian Creek Marble Co.*, 40 F.Supp. 811 (D.C.), it was held that the provision of the Tennessee Statute (T.C.A. § 23–1414) for incidental damage was *in addition to* the rights preserved by the U.S. Constitution and that the owner of property partly taken. may recover incidental damages to the particular tract involved in the taking, but not to damages suffered by a separate contiguous tract, no part of which was taken even though under the same ownership.

In 90 A.L.R. 793 is found a collection of authorities on the right of the owner of property adjoining a highway to an easement for a view of the property from the highway. Almost all such authorities are concerned with obstructions, such as buildings, signs and the like placed in the public way by adjacent landowners, and not by the governmental authority controlling the highway. However, one of the authorities is comparable with the present case.

In *Perlmutter v. Greene*, 140 Misc. 42, 249 N.Y.S. 495 (1931), *affd.*, 234 App.Div. 896, 254 N.Y.S. 542 (1931), it was held that the state had no right to build screens along its highway, thus shutting out the view of adjacent owners or the view of travelers upon the highway of adjacent property, unless the screens are erected in furtherance of a highway purpose, and the erection of a screen with no such purpose in view, but merely for esthetic purposes, and to prevent motorists crossing a certain bridge from seeing an advertising sign on adjoining property should be enjoifed.

This Court agrees with the principles announced in *Perlmutter*; but, since the announcement of that decision, the enactment of the Federal and State statutes on highway beautification has recognized or created as legitimate part of highway construction and maintenance the esthetic purposes which were not recognized in 1931 at the time of the *Perlmutter* decision.

■ The reasonable rule for application to the present case should be that the State may with impunity interfere with the view of motorists to adjacent property so long as the interference is the result of a bona fide program of highway beautification, and a litigant who seeks damages for such interference must allege and prove discriminatory conduct outside the general program of highway beautification.

■ This Court has concluded that plaintiffs' complaint shows no common law, constitutional or statutory right to compensation for the impairment of the visibility of their signs on any theory of "constructive taking."

■ Appellants state that they are not suing under a theory of inverse condemnation but are suing under rights granted to them by 23 U.S.C. 131 and T.C.A. § 54–2601. The U.S. Statute has already been reviewed. T.C.A. § 54–2601 merely states the title of the Act. T.C.A. § 54–2608 appears to be the section relied upon by appellants. Paragraph (a) of said section authorizes the acquirement and payment of just compensation for the *removal* of billboards. Paragraph (b) provides that compensation is authorized *only* for (1) taking from the owner of the billboard "*all right*, title, leasehold, and interest" in the billboard, or (2) taking from the owner of the land the right to erect and maintain a billboard on his land.

The "takings" for which compensation is authorized by T.C.A. § 54–2608 are the same "takings" described in 23 U.S.C. 131(g). Neither statute contemplates a "taking" by growth of obstructing vegetation.

■ Appellant relies upon the 1978 amendment to 23 U.S.C. 131(g) providing compensation for *removal* of billboards "whether or not *removed* pursuant to or because of this section." *Removal* is not accomplished by growth of obstructing vegetation. Neither is practical destruction of usefulness equivalent to *removal* or *taking* as defined in both federal and state acts.

Appellants insist that 23 U.S.C. 131(g) mandates compensation regardless of the manner and methods used to take billboards. The 1978 amendment relied upon by appellants does not refer to manner of taking, but deals with "whether or not *pursuant to* or *because of* the law. Nothing is expressed or implied in the federal act to enlarge the definitions of "taking" as set out therein.

Appellants rely upon *Barron v. Memphis*, 113 Tenn. 89, 80 S.W. 832 (1904). In that case the City had constructed a pier in a stream so as to divert the current of the stream against and across the property of plaintiff, eroding the earth and undermining a structure thereon. There was an actual, physical invasion and physical destruction of plaintiff's property.

In *I. C. Railroad Co. v. Moriarity*, 135 Tenn. 446, 186 S.W. 1053 (1916), cited by appellants, the construction of a railroad closed plaintiff's access to the public way which has uniformly been recognized as a right inherent in ownership of property. Access to the public say (ingress and egress) is not equivalent to visibility from the public way. Under the authorities previously cited, if the State should raise or lower the level of the highway surface and as a result, travellers were no longer able to see one of plaintiffs' billboards, plaintiffs would have no right of action for damages for "taking" of their billboard unless there was some physical seizure of some part of the billboard or the property upon which it is built. A fortiori, obscuring plaintiffs' billboards by allowing the growth of vegetation can create no right of action.

■ Finally, appellants insist that they have acquired special rights by the concurrent enactment of amended versions of the Federal Law providing for removal of billboards at joint federal and state expense and planting of vegetation at joint federal and state expense. While such legislation has a common purpose, the beautification of highways, its joint purpose does not include the creation of a new, previously unrecognized right of billboard owners to a clear and unobstructed view of their signs from the highway.

The clear intent of the Congress was to encourage beautification of highways by two methods, (a) removal of billboards, with compensation to owners, and (b) planting of vegetation, for which no compensation is provided to owners of obstructed billboards, either expressly or by implication.

It is true that wild vegetation, as well at that planted by the State, has and will have a normal tendency to grow taller and thereby in varying degrees obstruct the view from the highway of many items which would otherwise be seen. This is an eventuality which is not provided for in any federal or state statute which has been cited or found. In the absence of specific

statutory provision, the rights of plaintiffs can rise no higher and can extend no further than the rights of any other owner of property the view of which is obscured by maturing vegetation on adjoining property. This Court is unaware of any statutory or common law which requires an adjoining land owner to refrain from planting or to actively trim vegetation on his own property to avoid obscuring the view from or to his neighbor's property.

Plaintiffs seem to insist that the licensing of a billboard confers some special right of visibility or imposes some special duty upon the State to maintain visibility of the licensed billboard. No authority has been cited or found to sustain this novel theory which this Court is unwilling to incorporate for the first time into the law.

This Court concludes that the plaintiffs' complaint fails to state facts which entitle them to recover damages from the State for obscuring the view of their billboards.

The next relief sought by plaintiffs is a declaratory judgment that planting and/or permitting vegetation on the highway rights of way which obstructs the view of billboards is unlawful.

■ Even though the State has undertaken to control and ultimately remove non conforming billboards, and has undertaken to beautify the highways by appropriate planting, this does not mean that it is "unlawful" for the State to "fail" to remove and pay for any particular signs or to "fail" to cut vegetation in front of licensed signs or to plant vegetation which does or will obscure the view of signs. As discussed heretofore and hereafter, none of the applicable laws vests in plaintiffs any rights except the right to compensation in event of "removal" or "taking" by the State as defined in the statutes.

There is another factor which militates against such a declaration, and that is the practical difficulty of defining what is and is not an unlawful act or failure to act. Visibility of billboards is measured in substantial distances. Generally, they are built at a considerable distance from the highway

in order that travellers may see them for a considerable distance as they pass. It is not unreasonable to expect that a billboard be visible to a traveller while his vehicle moves from ¼ to ½ mile or more. In such a case, to preserve visibility of a given sign, it would be necessary for the State to keep vegetation pruned to a certain maximum height for the entire distance of visibility. Such a requirement would place an unreasonable burden upon the State and cause endless quarrels and bickering about whether particular vegetation did or did not lie within the line of sight between the billboard and passing motorists.

Thus, for lack of a law declaring such failure to prune or such planting to be unlawful, and for lack of any right in plaintiffs to complain, there can be no declaration of unlawful conduct as requested by plaintiffs.

The only other relief sought in plaintiffs' complaint is an order requiring the State to undertake and carry out an expeditious and orderly plan for the purchase and removal of all nonconforming billboards in the State.

Plaintiffs contend that it is unjust for the State to indicate a willingness to acquire and remove all nonconforming billboards but to avoid so doing by simply delaying while wild and planted vegetation grows and obscures the billboards thereby making unnecessary the expense of purchase and removal. There is some merit to this contention, however, no authority has been cited or found which would justify this Court in undertaking to force the State to carry out its intentions as expressed in the statute, T.C.A. §§ 54–2601 et seq.

The first reason this cannot be done is that the federal and state statutes create no right in plaintiffs except the right of compensation if and when their property is "removed" or "taken" as described in the statutes. There is no allegation to indicate that there has been any such taking.

The word, "removal", for purposes for this suit, refers to an action by the State which would result in the physical dismantling and transport of a sign away from its

existing site. There is no allegation that this has occurred. Indeed, it appears that one of the purposes of this suit is to force the State to "remove" plaintiffs' signs.

 The word "taking" is clearly defined in both the federal and state statutes. It consists of a "taking of all right, title, leasehold and interest" in a billboard, or "taking the right to erect and maintain" a billboard upon a given tract of land. Allowing plaintiffs' billboards to become obscured by natural growth of plants is not included in these definitions of "taking."

The second reason why relief cannot be granted is that neither the federal nor the state statute envisions such a means of forcing action by the State. The Federal Act (§ 131(b)) is specific in stating that non-compliance may be penalized by the Secretary of Transportation upon a finding by him of dereliction by a state. The statute provides no other method of enforcement, and this Court is unable to read into the law any implied grant of authority to the courts of this State to force this State to carry out the provisions of such law. If plaintiffs have a recourse, it must be through Federal officials or Federal courts.

This Court is satisfied that the complaint of plaintiffs fails to state grounds upon which any of the relief prayed for can be granted by the courts of this State. On this ground, the dismissal of complainants' suit is affirmed. All costs of this appeal are taxed against plaintiffs-appellants. The cause is remanded for collection of costs and any other supplemental proceedings which may be necessary and proper.

Affirmed and remanded.

LEWIS, J., concurs.

SHRIVER, P. J., concurs in separate opinion.

SHRIVER, Presiding Judge, concurring.

I concur in the carefully prepared and well reasoned opinion written by Judge Todd in this case. However, I do so with some reluctance for the following reasons:

While I agree, as Judge Todd so clearly sets forth in the majority opinion, that the State is not under a legal duty to keep the trees and undergrowth trimmed in front of the licensed billboards so as to prevent their being obscured from view, I feel that the State officials in charge of the matter have a moral duty in connection with it.

It seems to me that if the State chooses to license and accept a fee for the erection and/or maintenance of an advertising billboard it should refrain from having trees planted in front of it or allowing trees to grow to such heights or in such manner as to obscure it and, thus, render it useless to the licensee.

At least, if the State is not willing to assume the responsibility of trimming the trees and undergrowth in front of the billboards, it ought to grant permission to the advertisers or owners to do so under proper restrictions and supervision.