A99A2451. MORETON ROLLESTON, JR. LIVING TRUST
v. DEPARTMENT OF TRANSPORTATION.
(531 SE2d 719)

PHIPPS, Judge.

Moreton Rolleston, Jr. Living Trust owns a 50-foot by 85-foot tract of undeveloped land abutting an Interstate 75 frontage road. A billboard on the land has been leased to companies for advertising to I-75 northbound traffic. In 1995-1996, the Department of Transportation reconstructed a portion of I-75 near the billboard. The northbound lanes were lowered several feet, a center wall was constructed, and a 16-foot by 16-foot directional signboard was suspended 18 feet above the southbound lanes. The Trust claims that, afterward, visibility of its billboard to I-75 northbound traffic was reduced and that the billboard no longer produces revenue.

The Trust maintains that the only way to make the billboard visible again to northbound traffic is to raise it. In October 1996, the

Trust requested DOT's permission to raise its billboard. When DOT refused the Trust's requests, the Trust sued DOT, alleging that its refusal constituted a denial of equal protection and a taking.

DOT moved for summary judgment, and the Trust moved for partial summary judgment on the issue of liability. After a hearing, the trial court concluded that the Trust had not shown that it was treated differently than others similarly situated and had not shown a compensable taking. The court granted summary judgment to DOT and denied the Trust's motion for partial summary judgment. The Trust appeals.

Because the Trust has failed to show that it received treatment dissimilar to others similarly situated and has failed to show a compensable taking, we affirm.

On appeal of a grant of summary judgment, we determine whether the trial court erred in concluding that the moving party demonstrated that no genuine issue of material fact remained and that the party was entitled to judgment as a matter of law.[1] A defendant may do this by showing the court that the documents, affidavits, depositions, and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.[2] We view the evidence, and all reasonable conclusions and inferences drawn from it, de novo and in the light most favorable to the nonmovant.[3]

1. The Trust contends that the trial court erroneously granted DOT summary judgment on its equal protection claim. It maintains that DOT's refusal to allow it to raise its billboard constituted a denial of equal protection in violation of the Fourteenth Amendment[4] of the Constitution of the United States and of Art. I, Sec. I, Par. II[5] of the Constitution of the State of Georgia. To support this claim, the Trust must show that it was treated differently than others in the same or similar circumstances with no rational basis for the differing treatment.[6]

Georgia's Outdoor Advertising Control Act[7] regulates billboards and seeks to " 'promote the safety and recreational value of public travel, and to preserve natural beauty.' [Cit.]"[8] Under the Act, there are two classes of billboards, "conforming" and "nonconforming." A

---

[1] OCGA § 9-11-56 (c).

[2] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[4] "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[5] "No person shall be denied the equal protection of the laws."

[6] *Stuart-James Co. v. Tanner*, 259 Ga. 289, 290 (380 SE2d 257) (1989).

[7] OCGA § 32-6-70 et seq.

[8] *Dept. of Transp. v. Shiflett*, 251 Ga. 873, 875-876 (1) (310 SE2d 873) (1984).

nonconforming sign is one which was lawfully erected but no longer complies with state law or regulations due to changes in the law or regulations since the sign was erected.[9] The Trust's billboard, although lawfully erected in 1954, became a nonconforming sign after the Act was passed.

In 1981, Moreton Rolleston, Jr. applied for a permit to maintain the billboard as a nonconforming sign. The permit application stated:

> Applicant understands and agrees that if a permit for a nonconforming advertising outdoor sign is issued for this sign that the sign must remain substantially the same as it now is, that maintenance is allowed but only to the extent specified by DOT Rules and Regulations.

DOT granted the application.

The General Assembly's intent in creating a "nonconforming" classification was to avert " 'a substantial economic hardship' "[10] and to allow continued use of billboards that were in existence before the Act.[11]

As a nonconforming sign, the billboard may continue to stand, but it "must remain substantially the same as it was on the effective date of the State law or regulations which rendered [it] nonconforming. Extension . . . will be considered a change in the existing use."[12] Therefore, in October 1996, when the Trust requested DOT's permission to raise the billboard's height, DOT denied the request, determining that extending the billboard's height was a "change in existing use."[13]

Although the Trust points to other nearby nonconforming billboards that stand taller than its billboard, the record demonstrates that those billboards were classified "nonconforming" under dissimilar circumstances. All but one were initially classified as conforming signs, but when DOT extended an entrance ramp for I-75 in 1996, those signs then fell within a "blocked out" zone of an interchange.[14] They then became nonconforming and have since "remained substan-

---

[9] OCGA § 32-6-71 (12).

[10] OCGA § 32-6-71 (28).

[11] OCGA § 32-6-70 (b).

[12] Ga. DOT Rules & Regs. r. 672-6-.05 (d) (1) (v).

[13] See id. (the maintenance of a nonconforming sign is limited to: (1) replacement of nuts and bolts, (2) additional nailing, riveting or welding, (3) cleaning and painting, (4) manipulation to level or plumb the device, but not to the extent of adding guys or struts for stabilization of the sign structure; (5) a change of the advertising message, including changing faces, as long as similar materials are used and the sign face is not enlarged).

[14] See OCGA § 32-6-75 (a) (18) (no sign shall be erected or maintained outside of the corporate limits of a municipality and adjacent to an interstate highway within 500 feet of an interchange, intersection at grade, or safety rest area).

tially the same." Therefore, the Trust is not similarly situated to the owners of those billboards.

The Trust points to one billboard that was raised in height while classified as a nonconforming sign. But in that instance, the owner raised the billboard without obtaining DOT's permission. When the DOT discovered that the billboard had been raised, an administrative proceeding ended with a settlement, which provided that the billboard owner remove the illegal billboard within 30 months and pay $6,000 for illegally cutting trees. The Trust is not similarly situated to the owner of that billboard.

> Though there are similarities between the [circumstances of the Trust and other billboard owners], there are dissimilarities recognized by [DOT] in its decision which render appellant's equal protection argument meritless; [the Trust] is simply not in the same or similar circumstances as the [other billboard owners].[15]

2. The Trust contends that the trial court erroneously granted DOT summary judgment on its claim of a compensable taking. It maintains that the reconstruction of I-75, which reduced visibility of its billboard to I-75 northbound traffic, constituted a taking of its property in violation of the Fifth Amendment[16] of the United States Constitution and of Art. I, Sec. III, Par. I[17] of the Constitution of the State of Georgia. Whether an impairment is compensable depends on whether the impairment is that which is shared by the public in general, which is not compensable, or that which is special to the landowner, which is compensable.[18]

In *Dept. of Transp. v. Taylor*,[19] the plaintiff claimed that the DOT's widening of a bridge damaged him because the resulting changes in the traffic pattern would make it more difficult to enter and exit his property. The Court held that the plaintiff's inconvenience was caused by traffic flow and traffic volume and was shared by the public in general. Here, as in *Taylor*,[20] the Trust's claim is based on an impairment caused by changes in traffic flow and conditions, which are shared by the public in general and are not special to the Trust. Impaired visibility by a certain flow of traffic, without

---

[15] *Charter Med.-Fayette County v. Health Planning Agency*, 181 Ga. App. 184, 185 (3) (351 SE2d 547) (1986).

[16] "[P]rivate property [shall not] be taken for public use, without just compensation."

[17] "[P]rivate property shall not be taken or damaged for public purposes without just and adequate compensation. . . ."

[18] *Dept. of Transp. v. Taylor*, 264 Ga. 18, 19-20 (3) (a), (b) (440 SE2d 652) (1994).

[19] Id. at 21 (3) (c).

[20] Id.

more, does not constitute a taking or damaging of property that would entitle the Trust to compensation under either federal or state law. The fact that the Trust uses its property in a particular commercial manner does not change this result.[21] The trial court correctly ruled that the Trust has not shown a compensable taking.

3. Our holdings in Divisions 1 and 2 render the Trust's remaining enumeration of error moot.

*Judgment affirmed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 16, 2000 — 

*Moreton Rolleston, Jr.,* for appellant.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, R. O. Lerer, Senior Assistant Attorney General, Alison L. Spencer, Assistant Attorney General,* for appellee.

---

[21] See *Dept. of Transp. v. Bridges,* 268 Ga. 258 (486 SE2d 593) (1997) ("uniqueness" of property does not constitute a cause of action, nor does it transform an impairment to a compensable taking).