ANN WALSH BRADLEY, J.
*662 *380 ¶ 1 The petitioner, Adams Outdoor Advertising Limited Partnership, seeks review of an unpublished per curiam decision of the court of appeals affirming the circuit court's grant of summary judgment dismissing Adams' takings claim against the City of Madison.[1] The court of appeals concluded that Adams failed to show that the City took any property requiring just compensation. Specifically, it determined that Adams failed to demonstrate a cognizable right that underlies its asserted protected property interest.
¶ 2 Both parties agree that the City did not physically take any of Adams' property. They likewise agree that the City did not enact any zoning regulation restricting the use of previously acquired property interests. Instead, Adams asserts that its property was taken when the City constructed a pedestrian bridge over the Beltline Highway that blocked the visibility from the highway of the west-facing side of Adams' billboard.
¶ 3 According to Adams, the City took its property interest in its "vested rights in the legal nonconforming use" of its billboard. It alleges that a taking *381 occurred because the City deprived it of all economically beneficial use of the west-facing side of its billboard, and therefore Adams is entitled to just compensation.
¶ 4 The City disagrees, arguing that Adams has failed to identify a recognized right sufficient to support its taking claim. Specifically, the City contends that property owners have no right to continued and unobstructed visibility of their property from a public road.
¶ 5 Like the court of appeals, we determine that a right to visibility of private property from a public road is not a cognizable right giving rise to a protected property interest. Because Adams' claim, in essence, rests on asserting this unrecognized right, its takings claim must fail. See Wis. Med. Soc'y, Inc. v. Morgan, 2010 WI 94, ¶ 38, 328 Wis. 2d 469, 787 N.W.2d 22.
¶ 6 Accordingly, we affirm the decision of the court of appeals.
I
¶ 7 The billboard at issue in this case is located near the Beltline Highway in Madison on a single, irregularly shaped parcel of land, less than one-half of an acre in size. It is a single pole sign structure with two opposite-facing panels that was built in approximately 1995. One panel faces east and the other west, allowing for separate and distinct advertising messages.
¶ 8 Adams bought the irregularly shaped parcel of land containing the billboard for $200,000 in 2007. No other building or structure is located on Adams' land. Adams has not made any substantial improvements to its billboard since it purchased the parcel.
*382 Pursuant to Madison City Ordinance § 31.11(1), the billboard is nonconforming.[2] As such, the billboard is permitted to remain, but Adams cannot modify its height or location.
*663 ¶ 9 In 2013, pursuant to an agreement with the Wisconsin Department of Transportation, the City built the Cannonball Bridge (the bridge), a pedestrian and bicycle overpass crossing the Beltline Highway. The bridge is located adjacent to, but not on, Adams' property.
¶ 10 The bridge obstructs the view of the west-facing side of the billboard from Beltline traffic.[3] Adams asserts that since the construction of the bridge, it has not been able to sell advertising space on the west-facing panel of its billboard. The view from the east-facing side of the billboard remains unobstructed, and Adams continues to sell advertising space on the east-facing panel.
¶ 11 Adams' appraiser determined that before the construction of the bridge, the estimated value of *383 Adams' property was $1,460,000. After the bridge was erected, it asserts that the value of Adams' property declined to $720,000.[4]
¶ 12 Adams filed a complaint alleging in relevant part[5] that it has "constitutional protected property rights in [its] [p]roperty and [s]ign," and that the City has "occupied [its] [p]roperty and fully obstructed the west-facing [s]ign ...." It asserts that the City's construction of the bridge deprived Adams of substantially all beneficial uses of its property and sign. Therefore, according to Adams, it is entitled to initiate an inverse condemnation action pursuant to Wis. Stat. § 32.10 (2013-14)[6] because the City took its property and sign without compensation.
*384 ¶ 13 The City moved for summary judgment, arguing that Adams' takings claims *664 must fail because it does not identify a recognized property right taken by the City. Specifically, the City contends that there is no property right to continued visibility of a billboard. Further, the City argues that Adams cannot prove that the City took its property because there was neither an actual physical occupation of Adams' property by the City, nor did the City deprive Adams of all or substantially all of the beneficial uses of its property.
¶ 14 The circuit court granted the City's summary judgment motion. Relying on Randall v. City of Milwaukee, 212 Wis. 374, 249 N.W. 73 (1933), it concluded that "there is no property right at issue that has been taken by the placement of this bridge over the highway in close proximity but not on the property belonging to the plaintiff" because "[t]here's no property right to be seen."
¶ 15 It further explained that "[w]hat we have instead is a consequential or incidental result of the construction and maintenance [of the bridge] ... which is ... not a protectable interest that is if invaded subject to compensation for a taking." Finally, the circuit court determined that Zealy v. City of Waukesha, 201 Wis. 2d 365, 548 N.W.2d 528 (1996), requires that courts "value the billboard as a whole and not one side versus the other. And as a whole, it cannot be said *385 that all or substantially all of the beneficial use of this property has been obstructed."
¶ 16 The court of appeals affirmed in an unpublished per curiam opinion. Like the circuit court, the court of appeals relied on Randall, 212 Wis. 374, 249 N.W. 73, to reach its conclusion that obstruction of a view is not a taking of private property. Adams Outdoor Advert. Ltd. P'ship v. City of Madison, No. 2016AP537, unpublished slip op., ¶¶ 8-10, 377 Wis. 2d 728, 2017 WL 3085476 (Wis. Ct. App. July 20, 2017).
¶ 17 Adams petitioned this court for review.
II
¶ 18 In this case we are asked to review the court of appeals' decision affirming the circuit court's grant of summary judgment in favor of the City, dismissing Adams' takings claims against the City.
¶ 19 This court reviews a decision granting summary judgment independently, applying the same methodology as does the circuit court. Shugarts v. Mohr, 2018 WI 27, ¶ 17, 380 Wis. 2d 512, 909 N.W.2d 402. "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id.
III
¶ 20 The United States and Wisconsin Constitutions require payment of just compensation for private property taken for public use. The Fifth Amendment to the United States Constitution provides in relevant part: "nor shall private property be taken for public *386 use, without just compensation." U.S. Const. amend. V. Article I, Section 13 of the Wisconsin Constitution provides: "The property of no person shall be taken for public use without just compensation therefor." Wis. Const. art. I, § 13.[7]
¶ 21 In order to maintain an unconstitutional takings claim, four factors must be demonstrated: (1) a property interest exists; (2) the property interest has been *665 taken; (3) the taking was for public use; and (4) the taking was without just compensation. Wis. Med. Soc'y, 328 Wis. 2d 469, ¶ 38, 787 N.W.2d 22 (citing Wis. Retired Teachers Ass'n v. Emp. Tr. Funds Bd., 207 Wis. 2d 1, 18-24, 558 N.W.2d 83 (1997) ).
¶ 22 It is undisputed that the alleged taking here was for public use and the City did not compensate Adams for any damages sustained due to the construction of the bridge. Accordingly, the two disputed inquiries before this court are (1) whether a property interest exists and, if so, (2) whether that property interest has been taken. Wis. Med. Soc'y, 328 Wis. 2d 469, ¶ 38, 787 N.W.2d 22.
A
¶ 23 We must first identify the precise property interest at issue. Once identified, we examine next whether that property interest exists, that is, whether it is based on a right recognized under our takings jurisprudence.
*387 ¶ 24 Adams asks this court to characterize the property interest at stake as the preexisting right to the legal nonconforming use of its property. The City contends that the property interest in question is grounded on the right to continued "visibility of private property from a public road."[8]
*666 *388 ¶ 25 Adams disagrees with the City's characterization of its property interest as relying on a "right to be seen." Before this court Adams asserts that "this case is not about a freestanding right to be seen" and that "[t]he outcome of this case does not depend on whether any generalized right to be seen exists."
¶ 26 In contrast, before the circuit court, Adams repeatedly emphasized the import of the right to be viewed when describing the property interest at issue:
*389 What is the protected interest? It's the legal nonconforming use, the vested rights that we have in maintenance of that use. And what is the use? It's the display of advertising signs that can be viewed by the public.
Adams further explained to the circuit court that "[t]he nature of this use is to be viewed. If there's no right to be viewed, then it is illusory that the rights, the pre-existing use that we've got is illusory. If it can't be viewed, we have no value. In this context it has to be a protected property right."
¶ 27 At oral arguments before this court, counsel for Adams stated that "[t]he issue that has been presented in this case is whether Adams has the right to continue a preexisting use of its property, the sole purpose of which is to display advertising and be seen." Counsel for Adams explained further that:
In this case the use that we are seeking to protect is the [ ] display of the billboard which is to be seen. I am not trying to suggest that our ability to be seen is not a critical piece of this but it is a critical piece of it by virtue of the specific use here, not because we are seeking to establish a right to be seen.
Thus, on one hand Adams disclaims that it is relying on a right to visibility of its billboard from a public road. On the other hand, Adams consistently refers to the "critical" fact that this case would not be before this court but for the fact that the sole harm it has suffered is to the visibility of its private property from a public road.
¶ 28 We decline to characterize the property interest here in the overly broad and generalized fashion advocated by Adams. Such an expansive framing begs the question: what is the essence of the property interest in dispute?
*390 ¶ 29 Adams' billboard continues to enjoy its legal nonconforming status. It is undisputed that the City neither physically altered Adams' property in any way, nor did it enact any regulation restricting the use of Adams' property. Thus, we determine that the essence of Adams' asserted property interest is based on a right to visibility. But for the reduction in visibility of Adams' billboard from a public road, there would be no asserted takings claim.
B
¶ 30 Having determined that the property interest asserted here is based upon a right of visibility of private property from a public road, we turn next to address whether it is a recognized property right under our takings jurisprudence. See *667 Wis. Med. Soc'y, 328 Wis. 2d 469, ¶ 38, 787 N.W.2d 22 ; Luber v. Milwaukee Cty., 47 Wis. 2d 271, 278, 177 N.W.2d 380 (1970) (explaining that to determine whether there has been a taking, "a court of necessity must define property and determine what interests in property are significant enough to be protected from a taking without compensation").
¶ 31 The City asserts-and we agree-that Randall, 212 Wis. 374, 249 N.W. 73, is dispositive here. It provides that "[a]lthough [a property owner] may sustain consequential damages in so far as [a] street improvement will somewhat obstruct or interfere with ingress and egress, and the view to and from their land to the vehicular traveled portion of the street, that is not a taking of private property for public use ...." Id. at 382, 249 N.W. 73.
¶ 32 In Randall, the City of Milwaukee proposed to construct an underground pedestrian tunnel *391 and a shelter covering the entrance to the tunnel that would abut Randall's property. Id. at 376-77, 249 N.W. 73. The proposed shelter would substantially obstruct and interfere with the ingress and egress to Randall's property and the view from the street of any building erected on Randall's property. Id. at 377, 249 N.W. 73. Randall argued that the construction of the subway shelter would constitute an unconstitutional taking because it would impair Randall's property rights of "easements of access and view." Id. (emphasis added).
¶ 33 The Randall court disagreed, explaining that a property owner's rights "as an abutting owner are subject to such public street use and purpose as the location of the street requires." Id. at 378, 249 N.W. 73. As the Randall court explained:
[A]cts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the state or its agents, or give him any right of action. This is supported by an immense weight of authority. That has been the rule in this state.
212 Wis. at 382, 249 N.W. 73 (internal quotations omitted).
¶ 34 Randall reasoned that public thoroughfares, including highways, are dynamic spaces that must change and adapt over time. Id. at 378, 249 N.W. 73. It explained:
Lands are set aside for public streets and highways, not for the present, with its necessities and modes of *392 use, but for all time, with all the added demands that may be made upon the public ways within the scope of their original design, in the course of natural development that is constantly going on.
Id. (citation omitted). Thus, "the public rights in [streets] are plainly paramount" to those of private landowners. Id. at 380, 249 N.W. 73 (citation omitted).
¶ 35 Adams counters that Randall's conclusion that there is no recognized right to be seen from the street is limited to cases that deal with prospective, undeveloped uses of property where no vested rights were taken and nonconforming use status was not at issue. We disagree. Neither Randall, nor various cases citing Randall, contain such limiting language. See, e.g., Howell Plaza, Inc. v. State Highway Comm'n, 92 Wis. 2d 74, 81, 284 N.W.2d 887 (1979) ; More-Way N. Corp. v. State Highway Comm'n, 44 Wis. 2d 165, 170, 170 N.W.2d 749 (1969) ; Wis. Power & Light Co. v. Columbia Cty., 3 Wis. 2d 1, 6, 87 N.W.2d 279 (1958).
¶ 36 Furthermore, it is well-established that "there is no property right to *668 the flow of traffic along a highway." Surety Sav. & Loan Ass'n v. State Dep't of Transp. Div. of Highways, 54 Wis. 2d 438, 444, 195 N.W.2d 464 (1972) ; see also 118th St. Kenosha, LLC v. Wis. DOT, 2014 WI 125, ¶ 31, 359 Wis. 2d 30, 856 N.W.2d 486 ("The State may exercise its police power to authorize the relocation of a highway" and is "not always required to compensate all who are adversely affected by the relocation."); Hoffer Props., LLC v. State, DOT, 2016 WI 5, ¶ 26, 366 Wis. 2d 372, 874 N.W.2d 533 (explaining that "the legislature enabled DOT to periodically change the terms and conditions *393 by which any person-abutter or otherwise-has access to a controlled-access highway").
¶ 37 Given that a private property owner does not have a right to the continued flow of traffic from a public road, it reasonably follows that it does not have a property interest in the continued visibility of its property from that road. See, e.g., Troiano v. Colo. Dep't of Highways, 170 Colo. 484, 463 P.2d 448, 455 (1969) (explaining that because "a property owner has no right to have the traveling public pass his property, logically it would be inconsistent to say that a property owner has a right to have the traveling public afforded a clear view of his property"); State, Idaho Transp. Bd. v. HI Boise, LLC, 153 Idaho 334, 282 P.3d 595, 603 (2012) ("If ... a property owner does not have a property right in traffic flow around his property, it directly follows that he cannot assert a property right in that same traffic's ability to see his property"); State v. Schmidt, 867 S.W.2d 769, 774 (Tex. 1993) ("Just as a landowner has no vested interest in the volume or route of passersby, he has no right to insist that his premises be visible to them.").
¶ 38 In sum, private property owners abutting public roads are aware that public roads are subject to change. See Randall, 212 Wis. at 378, 249 N.W. 73. There is an ever-present risk that public roads may be improved in any number of ways. Id. Streets are routinely expanded or relocated and can be elevated or modified by the construction of electrical poles, signage, or pedestrian shelters. Id. at 379-82, 249 N.W. 73. Often roads can be closed for an extended period of time due to construction. A myriad of examples exists.
¶ 39 Property owners are on notice that such changes may alter or obstruct the view of their private property from the public road. Id. at 379-81, 249 N.W. 73. It is not *394 reasonable for a property owner to rely on the fact that it is located near a public road in a certain condition at a particular moment in time. See Surety Sav. & Loan Ass'n, 54 Wis. 2d at 444, 195 N.W.2d 464.
¶ 40 Numerous jurisdictions also have concluded that the right to visibility from a public road is not a recognized property right.[9] Indeed, Adams fails to *395 cite any *669 jurisdiction recognizing a right to visibility of private property from a public road in the absence of a physical taking.[10]
¶ 41 For example, the California Supreme Court rejected a takings claim by a billboard owner who asserted that palm trees that did not physically occupy any land owned by the billboard company reduced the visibility of its billboards, constituting a taking. Regency Outdoor Advert., Inc. v. City of Los Angeles, 39 Cal.4th 507, 46 Cal.Rptr.3d 742, 139 P.3d 119, 121 (2006). The California Supreme Court disagreed, concluding that "owners and occupiers of roadside property do not possess a 'right to be seen' that requires the payment of compensation for municipal landscaping efforts having no injurious effect on any property rights other than the claimed right to visibility." Id.
¶ 42 As here, the Regency court was assessing a takings claim in the context of a preexisting use of a billboard, where the sole harm alleged was that of loss of visibility from a public road. Id. 46 Cal.Rptr.3d 742, 139 P.3d at 122. The California Supreme Court explained that courts generally rely on three justifications for the "virtually unanimous" rule that there is no right to be seen from a public road. Id. 46 Cal.Rptr.3d 742, 139 P.3d at 125-27. Those justifications are: (1) road improvements that may limit visibility are foreseeable; (2) the government has the authority to maintain and improve the road system; and (3) the *396 abridgment of the right to reasonable ingress and egress is an abutter's only right warranting compensation when the government acts to improve a road. Id. 46 Cal.Rptr.3d 742, 139 P.3d at 127.
¶ 43 Adams attempts to distinguish Regency by asserting that the billboards in Regency were not "nonconforming." Yet, Adams cites no authority for its proposition that owners of legal nonconforming property should be provided broader protection than legally conforming property owners. As a policy matter, such an argument is unpersuasive.
¶ 44 Likewise, we do not find persuasive Adams' argument that the particular use of its land as containing solely a billboard gives rise to a right of visibility justifying special consideration under our taking law.[11] Various courts have expressly rejected *670 providing special consideration to billboard owners in this context.[12] *397 ¶ 45 Further, we observe that Adams' complaint is not that the City has invaded or unfairly restricted its property. Rather, Adams takes issue with a consequence of the City's modification of public property. See Randall, 212 Wis. at 383, 249 N.W. 73 ; see also State ex rel. State Highway Comm'n v. Lavasek, 73 N.M. 33, 385 P.2d 361, 364 (1963) (explaining that "[a]n easement of the right of view in an abutting property owner would create a burden on the servient tenement, the highway."). We decline to impose a burden on the City's ability to improve public roads here.
¶ 46 In sum, we conclude that a right to visibility of private property from a public road is not a cognizable right giving rise to a protected property interest. Because we determine that Adams failed to establish that a property interest exists here, we need not address whether a property interest was taken. See Wis. Med. Soc'y, 328 Wis. 2d 469, ¶ 38, 787 N.W.2d 22.
By the Court. -The decision of the court of appeals is affirmed.

Adams Outdoor Advert. Ltd. P'ship v. City of Madison, No. 2016AP537, 377 Wis. 2d 728, 2017 WL 3085476, unpublished slip op. (Wis. Ct. App. July 20, 2017) (affirming judgment of the circuit court for Dane County, Richard G. Niess, Judge).

Madison General Ordinance § 31.11(1) provides that "new, relocated and replacement advertising signs are prohibited." Madison, Wis., Gen. Ordinance § 31.11(1) (2015). However "[e]xisting advertising signs are nonconforming and permitted to remain" in specified districts, including certain commercial and industrialized districts. Id.

Adams states that the bridge "completely" blocks the view of the west-facing sign. However, the City explained:
[T]he west-facing side of the sign is not completely obscured. I've seen it several times myself. I know what it says. But the legal argument doesn't change, whether it's partially obscured or totally obscured. So if Adams wants for the summary judgment record to say that it's totally obscured, that's fine with me for purposes of the summary judgement decision.
At oral arguments before this court, the City reiterated that its stipulation that the bridge "completely" obstructs the view of the billboard was for the purposes of summary judgment only.

The City's appraiser disputes those figures, concluding that Adams' appraiser "overstate[d] the diminution value" in the appraisal prepared for the purposes of this lawsuit. According to the City's appraiser, it was "hard pressed to understand th[e] substantial change in real estate market value" asserted by Adams' appraiser because Adams purchased the property for $200,000 in 2007, yet it was assessed at over $1.4 million seven years later when no substantial improvements had been made to the property.

In its amended complaint, Adams asserted a variety of other claims against the City related to the construction of the bridge-namely trespass, nuisance, equal protection and due process violations, and a violation of the Highway Beautification Act. All were rejected by the lower courts. The only claim remaining before this court is Adams' takings claim.

Wisconsin Stat. § 32.10 -the inverse condemnation procedure-is the legislative direction for fulfilling the mandate of the just compensation clause of the Wisconsin Constitution. E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist., 2010 WI 58, ¶ 36, 326 Wis. 2d 82, 785 N.W.2d 409. It provides in relevant part:
If any property has been occupied by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. ... The court shall make a finding of whether the defendant is occupying property of the plaintiff without having the right to do so. ...
All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

Wisconsin courts generally apply the same standard when determining whether an unconstitutional taking has occurred under the Wisconsin and United States Constitutions. Wis. Med. Soc'y, Inc. v. Morgan, 2010 WI 94, ¶ 38, 328 Wis. 2d 469, 787 N.W.2d 22 (citing Zealy v. City of Waukesha, 201 Wis. 2d 365, 374, 548 N.W.2d 528 (1996) ).

The dissent errs by relying on a claim that is not made and facts that do not exist. It asserts that "the permit for the west-facing billboard" is the property interest at issue. Dissent, ¶ 47. This alternative definition of the property interest was first proposed in an amicus brief to this court by the Outdoor Advertising Association of Wisconsin. Neither party raised or briefed this alternative framing of the issue during the nearly four years of litigation in this matter.
In its complaint and amended complaint in the circuit court, Adams consistently and expressly framed its property interest as the "property rights in the [p]roperty and [s]ign." There is no mention of the billboard "permit" in Adams' amended complaint, or in its briefs to the court of appeals or this court. As further illustration that this case has nothing to do with a permit, neither party saw it necessary to introduce the permit into evidence. There is no billboard permit in this record.
Indeed, at oral arguments Adams conceded several times that it did not make a claim in this case that its billboard permit was the property interest that was taken:
The court: You're not claiming here, are you, that you have a property interest in the permit? I didn't see it in your complaint, I didn't see the word permit in your briefs, so I didn't think you were claiming that.
Adams: I think we do have a property interest in the permit. But I don't think that the property interest in the permit has been specifically taken in this case. The nature of the takings claim is the obstruction of the sign face (emphasis added).
The court: ... You're not claiming that in this case that the property that you want compensation for is the permit? Is that correct?
Adams: Not-That's correct, your honor. Not specifically.
Certainly Adams has forfeited any claim that the billboard permit constitutes a property interest. State v. Ndina, 2009 WI 21, ¶¶ 29-30, 315 Wis. 2d 653, 761 N.W.2d 612. Additionally, we decline to address this argument raised for the first time in an amicus brief, as it is not properly before us. Cty. of Barron v. LIRC, 2010 WI App 149, ¶ 30, 330 Wis. 2d 203, 792 N.W.2d 584 (citations omitted) (explaining that "courts need not consider arguments raised only by amici"). We save such a claim for another day.
The dissent also errs by relying heavily on facts not present in the record. Specifically, the dissent asserts that the City of Madison treats the two sides of its billboard as separate property by requiring an individual permit for each side, rather than issuing a single permit that covers the billboard structure as a whole. See dissent, ¶ 49. Indeed, this unsubstantiated factual allegation permeates the dissent's analysis. See id., ¶¶47, 55-56, 58-61, 63-69, 72-74.
At oral argument, the City disputed these alleged facts explaining that they are "not in the record" and that the City did not "believe that it's true" that separate permits were issued for each side of the billboard. The City explained:
[Counsel for Adams] stated in the oral argument today [that] it is a critical piece of the analysis that the City issued separate permits for the separate faces of the sign. Well there's a critical error in that argument. That being that that is not in the record. And I don't believe that it's true. There is some discussion in the amicus brief from the [Outdoor Advertising] Association regarding some law that the Association says would allow the City to do that, but there is nothing in the record to indicate that the City has actually treated the billboard that way and I don't believe that the City has. So that is a critical-critical problem.

See, e.g., Reid v. Jefferson Cty., 672 So.2d 1285, 1289-90 (Ala. 1995) ; Regency Outdoor Advert., Inc. v. City of Los Angeles, 39 Cal.4th 507, 46 Cal.Rptr.3d 742, 139 P.3d 119, 121 (2006) ; Troiano v. Colorado Dep't of Highways, 170 Colo. 484, 463 P.2d 448, 455 (1969) ; Moreton Rolleston, Jr. Living Tr. v. Dep't of Transp., 242 Ga.App. 835, 531 S.E.2d 719, 722 (2000) ; State, Idaho Transp. Bd. v. HI Boise, LLC, 153 Idaho 334, 282 P.3d 595, 602-04 (2012) ; Stagni v. State ex rel. Dep't of Transp. & Dev., 812 So.2d 867, 871 (La. Ct. App. 2002) ; Kansas City v. Berkshire Lumber Co., 393 S.W.2d 470, 474 (Mo. 1965) ; Probasco v. City of Reno, 85 Nev. 563, 459 P.2d 772, 774 (1969) ; State ex rel. State Highway Comm'n v. Lavasek, 73 N.M. 33, 385 P.2d 361, 364 (1963) ; Acme Theatres, Inc. v. State, 26 N.Y.2d 385, 310 N.Y.S.2d 496, 258 N.E.2d 912, 914-15 (1970) ; Adams Outdoor Advert. of Charlotte v. Dep't of Transp., 112 N.C.App. 120, 434 S.E.2d 666, 669 (1993) ; Filler v. City of Minot, 281 N.W.2d 237, 244 (N.D. 1979) ; In re Condemnation by the Delaware River Port Auth., 667 A.2d 766, 769 (Pa. Commw. Ct. 1995) ; Outdoor Advert. Ass'n. of Tenn. v. Shaw, 598 S.W.2d 783, 788-90 (Tenn. Ct. App. 1979) ; State v. Schmidt, 867 S.W.2d 769, 774 (Tex. 1993) ; see also Malone v. Commonwealth, 378 Mass. 74, 389 N.E.2d 975, 979 (1979).
Some jurisdictions take a more nuanced approach, providing that when there is a physical taking of private property, loss of visibility may be considered as an element of severance damages. See, e.g., 8,960 Sq. Feet, More or Less v. State, Dep't of Transp. & Pub. Facilities, 806 P.2d 843, 848 (Alaska 1991) ; State by Humphrey v. Strom, 493 N.W.2d 554, 561-62 (Minn. 1992) ; State by Comm'r of Transp. v. Weiswasser, 149 N.J. 320, 693 A.2d 864, 874-76 (1997) ; Utah Dep't of Transp. v. Admiral Beverage Corp., 275 P.3d 208, ¶ 19 (Utah 2011). However, as the Supreme Court of New Jersey explained, "[t]he critical factor [ ] in determining if loss of visibility is a compensable element of damages in a partial-taking condemnation[ ] is whether the loss arises from changes occurring on the property taken." Weiswasser, 693 A.2d at 876 (emphasis added). Here, it is undisputed that there was no physical taking or change made to Adams' property.

The dissent, too, appears to concede that the right to visibility from a public road is not a recognized property right. See dissent, ¶ 55 (listing four property interests at stake in this case, none of which includes a right of visibility).

Before the circuit court, counsel for Adams argued: "[A] property owner doesn't have an absolute right to unrestricted or unimpaired view of their property from some public space. But that assumes that the nature of the use or the use of your property isn't solely to be viewed. And that's what we've got here."

See, e.g., Moreton Rolleston, Jr. Living Tr. v. Dep't of Transp., 242 Ga.App. 835, 531 S.E.2d 719, 722 (2000) (concluding that impaired visibility of a nonconforming billboard from a highway due to the construction of a bridge does not constitute a taking and the "fact that [an owner] uses its property in a particular commercial manner does not change this result"); Outdoor Advert. Ass'n of Tenn. v. Shaw, 598 S.W.2d 783, 790 (Tenn. Ct. App. 1979) (rejecting the contention that "the licensing of a billboard confers some special right of visibility or imposes some special duty upon the State to maintain visibility of the licensed billboard"); In re Condemnation by the Delaware River Port Auth., 667 A.2d 766, 768 (Pa. Commw. Ct. 1995) (explaining that "what the [billboard] owner is losing, in fact, is the benefit-entirely unearned by him-to his land of the commercially exploitable proximity of heavy traffic. Since he has no right to this benefit and has done nothing to create it, he should have little cause to complain at losing it.") (citation omitted); see also Regency Outdoor Advert., Inc. v. City of Los Angeles, 39 Cal.4th 507, 46 Cal.Rptr.3d 742, 139 P.3d 119, 128-29 (2006) ; Adams Outdoor Advert. of Charlotte v. Dep't of Transp., 112 N.C.App. 120, 434 S.E.2d 666, 668 (1993).