In the

 United States Court of Appeals
 for the Seventh Circuit
 ____________________
No. 22-2489
BRIAN KREUZIGER,
 Plaintiff-Appellant,
 v.

MILWAUKEE COUNTY, WISCONSIN,
and MILWAUKEE METROPOLITAN
SEWERAGE DISTRICT,
 Defendants-Appellees.
 ____________________

 Appeal from the United States District Court
 for the Eastern District of Wisconsin.
 No. 19-CV-1747-JPS — J.P. Stadtmueller, Judge.
 ____________________

 ARGUED JANUARY 25, 2023 — DECIDED FEBRUARY 13, 2023
 ____________________

 Before SYKES, Chief Judge, and WOOD and PRYOR, Circuit
Judges.
 SYKES, Chief Judge. In the late 1930s, Milwaukee County
built a dam on the Milwaukee River in Estabrook Park, an
urban green space that runs along the east bank of the river
where the City of Milwaukee borders suburban Shorewood
2 No. 22-2489

and Whitefish Bay. In 2017 the County transferred the dam
to the Milwaukee Metropolitan Sewerage District for the
purpose of removing it. Demolition was completed the
following year.
 With the dam removed, the water level immediately up-
stream fell by about four feet from its previous high-water
mark. Brian Kreuziger owns a home along this stretch of the
river, and the drop in the water level exposed a ten-foot
swath of swampy land on his waterfront that used to be
submerged. He sued the District and Milwaukee County,
alleging that their removal of the dam amounted to a taking
of his riparian right to the prior surface water level without
just compensation. See U.S. CONST. amend. V; WIS. CONST.
art. I, § 13. Ruling on cross-motions for summary judgment,
the district judge entered judgment for the defendants,
holding that Kreuziger had no property right to have the
river remain at the previous level. We affirm.
 I. Background
 This case comes to us from a decision on cross-motions
for summary judgment, so we construe the evidence and
draw reasonable inferences in favor of Kreuziger as the
party against whom the motion under consideration was
made. Gill v. Scholz, 962 F.3d 360, 363 (7th Cir. 2020).
 In 1937 Milwaukee County obtained a permit from the
Wisconsin Public Service Commission to build a dam on the
Milwaukee River, a navigable waterway, at a location near
the northern border of Estabrook Park. According to the
permit, the purpose of the dam was to promote “flood
control, maintain[] normal water level under normal condi-
tions, and … provide recreational facilities.” Shortly thereaf-
No. 22-2489 3

ter, the County built what became known as the “Estabrook
Dam,” and it owned and operated the dam from 1938 to
2017.
 Starting in 1986, the County implemented seasonal
drawdowns of the river, closing the gates in the spring and
opening them in the fall. When the gates were closed, the
river backed up, creating an artificial impoundment and
raising the water level upstream. When the gates were
opened in the fall, the upstream water level receded.
 In September 2000 Kreuziger and his wife purchased a
riverfront home immediately upstream from the dam in
suburban Glendale. In 2009 the Wisconsin Department of
Natural Resources (“DNR”), which manages the state’s
rivers, ordered the County to repair or abandon the
Estabrook Dam. Years of political controversy and litigation
ensued: upstream property owners, environmentalists, and
county officials clashed over the fate of the dam. In 2017 the
County obtained the DNR’s permission to transfer the dam
to the Milwaukee Metropolitan Sewerage District for the
purpose of demolishing it. The District then applied for a
permit to remove the dam. The DNR issued the permit, and
the demolition was completed in 2018.
 After the dam was removed, the surface water level
along Kreuziger’s river frontage dropped by about four feet
from the high-water mark typically experienced in the
summer months when the dam’s gates were closed. The new
water level is roughly comparable to the traditional seasonal
drawdowns in the fall when the gates were opened. The
lower surface level of the river exposed a ten-foot strip of
marshy land between Kreuziger’s seawall and the water’s
edge that had previously been submerged.
4 No. 22-2489

 Kreuziger sued the District and Milwaukee County un-
der 42 U.S.C. § 1983 invoking the Takings Clause of the Fifth
Amendment to the United States Constitution and the Just
Compensation Clause of the Wisconsin Constitution. He
alleged that by removing the dam and thereby lowering the
river’s water level, the defendants took his riparian right to
the previous water level and owed him compensation. In
due course, the parties filed cross-motions for summary
judgment. Kreuziger sought partial summary judgment on
liability; the defendants argued that they had not taken
anything because Kreuziger had no property right to the
maintenance of the previous water level at or below the
traditional high-water mark.
 The judge denied Kreuziger’s motion and entered judg-
ment for the defendants. Relying on United States v. Willow
River Power Company, 324 U.S. 499, 509–10 (1945), the judge
determined that Kreuziger had no riparian right to the
continuation of a particular surface water level along his
river frontage; his interest in a higher water level was, at
most, a convenience that must yield to the public’s para-
mount interest in maintaining the state’s navigable water-
ways.
 II. Analysis
 The Fifth Amendment to the United States Constitution
provides that private property cannot “be taken for public
use, without just compensation.” U.S. CONST. amend. V. The
Takings Clause applies to the States via the Fourteenth
Amendment. Kelo v. City of New London, 545 U.S. 469, 472 n.1
(2005). Similarly, the Wisconsin Constitution bars the taking
of private property for public use without just compensa-
tion. WIS. CONST. art. I, § 13. When the government takes
No. 22-2489 5

private property without paying for it, the aggrieved owner
may sue immediately. Knick v. Township of Scott, 139 S. Ct.
2162, 2167 (2019) (overruling Williamson Cnty. Reg’l Plan.
Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985),
which had required plaintiffs to exhaust state remedies first).
 To prevail on a federal takings-clause claim, an aggrieved
property owner must make a threshold showing that the
government has taken, either physically or by unduly oner-
ous regulation, private property belonging to the plaintiff.
Conyers v. City of Chicago, 10 F.4th 704, 710–11 (7th Cir. 2021),
cert. denied, 142 S. Ct. 1669 (Apr. 18, 2022). Wisconsin law
requires the same. Adams Outdoor Advert. Ltd. P’ship v. City of
Madison, 914 N.W.2d 660, 664–65 (Wis. 2018).
 Kreuziger argues that the defendants owe compensation
for taking his riparian right to a higher water level on the
river because their removal of the dam did nothing to im-
prove navigation. His argument presumes that he has a
property right to a particular water level at all. He does not.
 In Wisconsin a riparian owner—that is, someone who
owns land on a navigable waterway—has various riparian
rights, such as “the right to use the shoreline and have access
to the waters … [and] the right to have water flow to the
land without artificial obstruction.” Movrich v. Lobermeier,
905 N.W.2d 807, 813–14 (Wis. 2018) (cataloguing riparian
rights) (quotation marks omitted). But riparian property
rights are encumbered by and subordinate to the state’s
interest under the public-trust doctrine. Wisconsin holds the
beds of its navigable lakes and rivers in trust for the benefit
of the public, and riparian rights exist only insofar as they do
not conflict with the public’s interest in preserving navigable
waters. See R.W. Docks & Slips v. State, 628 N.W.2d 781, 788
6 No. 22-2489

(Wis. 2001). Riparian property owners cannot interfere with
the public’s navigation rights on the state’s navigable lakes
and rivers. Doemel v. Jantz, 193 N.W. 393, 398 (Wis. 1923).
 “Navigation” is a term of art in this context and includes
commercial transportation and noncommercial recreational
activities, such as fishing, hunting, and boating. Id. at 395,
397. Accordingly, the public-trust doctrine is interpreted
expansively to protect the public’s interest in navigation,
recreation, and the enjoyment of the scenic beauty of the
state’s lakes and rivers. R.W. Docks & Slips, 628 N.W.2d at
787–88.
 Kreuziger insists that his bundle of riparian rights in-
cludes the right to have the river’s water level remain un-
changed. He says that Wisconsin recognized this right in
Smith v. Youmans, 70 N.W. 1115 (Wis. 1897). There, a private
dam operator sought to remove its 40-year-old dam, which
had been built at the outlet of a lake where the water flowed
into a stream connecting to another lake. Id. The dam’s
diversion of the natural water flow had the effect of raising
the water level of the lake; removing it would have substan-
tially lowered the lake’s water level, thereby harming the
property values of summer homes that had been built
around the lake. Id. The Wisconsin Supreme Court blocked
the removal of the dam because the other riparian owners
had acquired by reliance an interest in maintaining the lake’s
water level. Id. at 1116.
 Smith does not help Kreuziger. That case dealt with a
clash of rights among private riparian owners. This case
involves the government’s interest in maintaining navigable
waterways in the exercise of its responsibilities under the
public-trust doctrine.
No. 22-2489 7

 The Supreme Court’s decision in Willow River illustrates
this distinction and is decisive here. Like this case, Willow
River concerned the riparian rights of a Wisconsin riverfront
property owner—there, a utility company that operated a
hydroelectric plant on the St. Croix River using the waters of
the river to generate power. 324 U.S. at 500. In 1938 the
federal government built the Red Wing Dam on the upper
Mississippi River, into which the St. Croix flows; the new
dam altered the water level at the power company’s proper-
ty, diminishing the plant’s capacity to generate electricity. Id.
at 501. The power company claimed a riparian right to the
previous water level and brought a takings suit seeking
compensation from the United States.
 The Court rejected the claim, observing that the compa-
ny’s interest in the river’s surface water level was only “a
privilege or a convenience, enjoyed for many years, permis-
sible so long as compatible with navigation interests, but it is
not an interest protected by law when it becomes incon-
sistent with plans authorized by Congress for improvement
of navigation.” Id. at 509. The Court confirmed that the
riparian rights of the owners of property on navigable
waterways “are subject always to a dominant servitude in
the interests of navigation and its exercise calls for no com-
pensation.” Id. When the government’s regulatory authority
conflicts with a riparian owner’s interest in the surface level
of a navigable waterway, the governmental interest is supe-
rior:
 Whatever rights may be as between equals
 such as riparian owners, they are not the
 measure of riparian rights on a navigable
 stream relative to the function of the Govern-
8 No. 22-2489

 ment in improving navigation. Where these in-
 terests conflict[,] they are not to be reconciled
 as between equals, but the private interest
 must give way to a superior right, or perhaps it
 would be more accurate to say that as against
 the Government such private interest is not a
 right at all.
Id. at 510.
 Put more succinctly, the riparian rights of waterfront
property owners are subordinate to the government’s au-
thority to regulate navigable waterways under the public-
trust doctrine. And the government’s regulatory authority
over navigable waterways is not limited to “navigation” in
the commonly understood sense; rather, it broadly includes
the authority to regulate in furtherance of other public
interests such as recreation and environmental preservation.
R.W. Docks & Slips, 628 N.W.2d at 787–88.
 Kreuziger also suggests that he has a riparian right “to
have water flow to the land without artificial obstruction.”
Movrich, 905 N.W.2d at 814 (quotation marks omitted). He
asserts without authority that the water level the dam creat-
ed is now the established water level and that removing the
dam is equivalent to artificially obstructing water flow. But
Movrich is inapposite because it dealt with riparian owners’
competing rights of access to a man-made lake. See id. It did
not establish that government action returning a river to its
natural course infringes a riparian owner’s right to an artifi-
cial water level. See id.
 In sum, Wisconsin holds in trust its navigable waters, in-
cluding the land below the ordinary high-water mark of its
No. 22-2489 9

lakes and rivers, and “[t]he rights of riparian owners … are
qualified, subordinate, and subject to the paramount interest
of the state and the paramount rights of the public in navi-
gable waters.” R.W. Dock & Slips, 628 N.W.2d at 788. The
state legislature has delegated to the DNR substantial au-
thority to administer this public trust. Wis.’s Env’t Decade,
Inc. v. Dep’t of Nat. Res., 271 N.W.2d 69, 72 (Wis. 1978).
Kreuziger has not identified a case supporting his claim that
he has a property right to the continuation of a particular
surface water level along his river frontage. That’s not
surprising; rivers frequently ebb and flow, and lower water
levels as such have never been held to implicate a taking.
Quite the opposite—when a river recedes, a riparian owner’s
rights expand proportionally. See Doemel, 193 N.W. at 398.
Because Kreuziger “had no private property right to” a
particular water level in the river, he “cannot have suffered
an unconstitutional taking.” R.W. Docks & Slips, 628 N.W.2d
at 787.
 So Kreuziger’s argument that removing the dam did not
actually improve navigation is beside the point. He also
argues that the judge erred by ignoring a disputed material
fact—the degree to which removing the dam reduced the
river’s water level. But this dispute is also immaterial. No
matter how much the river receded, Kreuziger had no right
to have it remain at the previous high-water mark.
 Finally, Kreuziger argues that the result here is “unjust,
inequitable, and unconscionable” because the defendants
have created an unowned, 1 unsightly strip of land abutting

1 Kreuziger says that the boggy strip of land is unowned, but what he

seems to mean is that its ownership may be the subject of dispute. If the
land is still part of the riverbed—that is, below the ordinary high-water
10 No. 22-2489

his property. Yet neither the Wisconsin Constitution nor the
United States Constitution promises to “socialize all losses,
but [only] those … which result from a taking of property.”
Willow River Power Co., 324 U.S. at 502; E-L Enters. v. Milwau-
kee Metro. Sewerage Dist., 785 N.W.2d 409, 421 (Wis. 2010).
Without an actual taking of property, a takings claim cannot
succeed. Willow River Power Co., 324 U.S. at 510; R.W. Docks
& Slips, 628 N.W.2d at 787.
 Kreuziger holds no right to have the Milwaukee River
remain at the high-water level created by the Estabrook
Dam. The defendants cannot have taken a right that he
never had.
 AFFIRMED

mark—then it is held in the public trust. R.W. Docks & Slips v. State,
628 N.W.2d 781, 787 (Wis. 2001). If the river has permanently receded,
then the strip of land presumably belongs to him. See Movrich v.
Lobermeier, 905 N.W.2d 807, 814 (Wis. 2018); Doemel v. Jantz, 193 N.W. 393,
398 (Wis. 1923) (noting that the owner of riverfront property owns to the
thread of the stream, except that lands submerged by navigable rivers
are subject to the public trust).